FILED

DEC 02 2011

SUSAN M SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

**ORDERED PUBLISHED**

# UNITED STATES BANKRUPTCY APPELLATE PANEL

# OF THE NINTH CIRCUIT

| | |
|---|---|
| In re: | BAP No.   SC-10-1423-MkHKi |
| JASON BELICE AND MISHELLE BELICE, | Bk. No.   09-14236 |
| | Adv. No.  09-90576 |
| Debtors. | |
| MICHAEL BARNES, | |
| Appellant, | |
| v. | **OPINION** |
| JASON BELICE, | |
| Appellee. | |

Argued and Submitted on October 20, 2011
at San Diego, California

Filed – December 2, 2011

————————

Appeal from the United States Bankruptcy Court
for the Southern District of California

Honorable Peter W. Bowie, Chief Bankruptcy Judge, Presiding

————————

Appearances:  Michael L. Klein of Greenman, Lacy, Klein, O'Harra & Heffron appeared on behalf of Appellant Michael Barnes.[*]

————————

Before:  MARKELL, HOLLOWELL and KIRSCHER, Bankruptcy Judges.

————————

[*]  No one appeared at oral argument on behalf of Jason Belice, and the panel deemed Mr. Belice's position submitted on the briefs filed.  Subsequently, counsel for Mr. Belice requested that the panel reset oral argument, or allow him to file a letter brief in lieu of oral argument.  The panel denied the motion.

MARKELL, Bankruptcy Judge:

**INTRODUCTION**

Plaintiff Michael Barnes ("Barnes") claims debtor Jason Belice ("Belice") obtained loans from him by fraud. When Belice filed a chapter 7[1] bankruptcy and attempted to discharge those debts, Barnes objected. He filed an adversary proceeding under § 523(a)(2), alleging that Belice lied about various parts of his financial life and his assets in order to obtain the loan.

Belice objected to Barnes' complaint, and the bankruptcy court granted several motions by Belice to dismiss it. Ultimately, the bankruptcy court held that Belice's alleged lies and misrepresentations about specific assets were "statement[s] respecting the debtor's . . . financial condition" as contemplated by § 523(a)(2)(A). It thus dismissed Barnes' complaint. We disagree, and REVERSE and REMAND.

**BACKGROUND**

Belice and his wife filed their chapter 7 bankruptcy petition on September 22, 2009. Upon review, the clerk classified Belices' case as a no-asset bankruptcy case. The Belices' schedules listed only roughly $10,000 in exempt personal property.[2]

---

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and all "Rule" references are to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037. All "Civil Rule" references are to the Federal Rules of Civil Procedure.

[2] We obtained this information by reviewing the items on the bankruptcy court's automated bankruptcy case docket in the
(continued...)

2

Barnes filed his first nondischargeability complaint in December 2009. This complaint alleged that Barnes had lent Belice $15,000 ("Loan") in March 2008 based in part on Belice's representation that he would and did provide adequate security. The security offered was a warrant purportedly entitling Barnes to acquire 30% of Belice's interest in a partnership known as the Belice-Mehta Partnership. The warrant's strike price was the satisfaction of all amounts owed on the Loan.

The complaint alleged that Belice's representation regarding the nature of the security was false. It further alleged that Belice knowingly and intentionally made this misrepresentation with the intent to deceive Barnes and to induce him to make the Loan. In addition, Barnes' complaint indicated that Barnes later lent Belice another $10,000 based on the same misrepresentation. Barnes thus claimed damages of $25,000 plus interest as Belice never repaid anything and the security given was worthless.

In February 2010, Belice moved to dismiss Barnes' complaint under Civil Rule 12(b)(6)("First Motion To Dismiss"), arguing that the complaint did not sufficiently allege claims for relief under any of the nondischargeability grounds cited.[3] Barnes

[2](...continued)
Belices' bankruptcy case. We may take judicial notice of the contents and filing of these items. See Atwood v. Chase Manhattan Mortg. Co. (In re Atwood), 293 B.R. 227, 233 n.9 (9th Cir. BAP 2003)(citing O'Rourke v. Seaboard Sur. Co. (In re E.R. Fegert, Inc.), 887 F.2d 955, 957-58 (9th Cir. 1989)).

[3] Civil Rule 12(b)(6) applies in bankruptcy through application of Rule 7012(b).

Belice's response to the First Motion To Dismiss contained his own version of the circumstances surrounding the Loan, and he
(continued...)

3

disagreed.[4]

The bankruptcy court granted Belice's motion, stating that Barnes' allegations regarding Belice's misrepresentations about the proposed collateral were not sufficiently specific. But the court went further and identified another flaw in Barnes' § 523(a)(2)(A) claim: according to the court, any misrepresentation regarding the value of the proposed collateral would have been a "statement respecting the debtor's or an insider's financial condition." If correct, any fraud based on those representations would be excluded from § 523(a)(2)(A).

The court thus granted the First Motion to Dismiss, but did so without prejudice to Barnes amending his complaint. Barnes then filed a first amended complaint which attempted to address the court's concerns. In particular, Barnes alleged that Belice had made the following false statements:

> a) Debtor's [Belice's] monthly salary as an attorney . . . was $30,000;

---

[3](...continued) has reiterated these factual assertions in his brief on appeal. Nothing in the record indicates that the bankruptcy court considered Belice's version of the facts, nor will we. In considering Civil Rule 12(b)(6) motions, a court must accept as true all well-pled facts, unaffected by any contrary factual assertions. Johnson v. Riverside Healthcare Sys., 534 F.3d 1116, 1122 (9th Cir. 2008) (citing Broam v. Bogan, 320 F.3d 1023, 1028 (9th Cir. 2003)).

[4] Barnes' original complaint had also sought declarations of nondischargeablity under §§ 523(a)(4) and (a)(6). Barnes expressly abandoned his § 523(a)(4) claim at the hearing on the First Motion To Dismiss. Barnes abandoned his § 523(a)(6) claim when he did not challenge on appeal the court's dismissal of that claim. See Golden v. Chicago Title Ins. Co. (In re Choo), 273 B.R. 608, 613 (9th Cir. BAP 2002) (holding that arguments not raised in the appellant's opening brief are deemed waived).

4

b) Debtor had made a $100,000 profit on the sale of his La Jolla residence in 2007;

c) Debtor was paying $7,000 per month in rent which he could well afford;

d) Debtor was a San Diego Charger [sic] season ticket holder;

e) Debtor had purchased a $28,000 diamond engagement ring in July 2007;

f) Debtor voluntarily left [his law firm] in late 2007 because of more lucrative income in the luxury transportation sector (helicopter and jet service) and his involvement with a computer systems company;

g) The security for Plaintiff's loan would be a partial ownership interest in the BELICE-MEHTA PARTNERSHIP, an investor in an entertainment establishment in Macau, called the Monkey Bar;

h) The Monkey Bar was extremely successful, would likely be sold to the Sands Casino company in 2008, and would provide the Debtor with yet another revenue source; and

i) Debtor's interest in the BELICE-MEHTA PARTNERSHIP was worth far more than the loan from the Plaintiff to the Debtor.

First amended complaint (July 7, 2010) at 3:18-4:13. Barnes further alleged that Belice had fraudulently failed to disclose that Belice was being sued for $530,000 as a guarantor of a debt of a company known as Running Horse Development Group, LLC (the "Running Horse Liability").

Belice filed a motion to dismiss the first amended complaint, which the court also granted without prejudice. We do not know the basis for this ruling.[5]

---

[5] Neither party ordered the transcript from the June 2010 hearing on the Second Motion To Dismiss, so we do not know precisely how or why the court ruled as it did on the Second Motion To Dismiss, but the statements the court later made when
(continued...)

Barnes then duly filed a second amended complaint, the complaint that is at issue in this appeal (the "Complaint"). Although he made some nonmaterial changes, he did not change the series of Belice's alleged misrepresentations, including the assertion that the failure to disclose the Running Horse Liability was a misrepresentation precluding discharge.

Belice moved yet again to dismiss the Complaint with prejudice. At the hearing, the bankruptcy court based its decision on familiar grounds: "The bulk of my problem remains the same as it was the last time around . . . . And that is, it appears to me that the representations of which you complain are representations going to financial condition." Hr'g Tr. (Sept. 13, 2010) at 4:8-11.

Barnes countered that the court should apply the strict definition of the phrase "statement respecting financial condition" applied in Cadwell v. Joelson (In re Joelson), 427 F.3d 700 (10th Cir. 2005) and in Eugene Parks Law Corp. Defined Benefit Pension Plan v. Kirsh (In re Kirsh), 973 F.2d 1454, 1457 (9th Cir. 1992). Under this definition, he asserted, the Complaint allegations regarding Belice's misrepresentations were sufficient to state a claim under § 523(a)(2)(A).

The court disagreed. It again ruled against Barnes. The court also expressed the view that Barnes had not alleged and

[5](...continued)
it dismissed Barnes' Complaint indicate that, in large part, the court granted the Second Motion To Dismiss because it construed all of the alleged misrepresentations to be "statement[s] respecting the debtor's or an insider's financial condition" expressly excluded from coverage under § 523(a)(2)(A).

6

could not allege any duty to disclose the Running Horse Liability.

On October 21, 2010, the bankruptcy court entered a short memorandum and order in which it reasoned that Barnes' allegations were insufficient under § 523(a)(2)(A) because they consisted of oral statements respecting Belice's financial condition, and as such could not be used to support a claim under § 523(a)(2)(A). Even though Belice had requested that any dismissal be with prejudice, the bankruptcy court without explanation crossed out the words "with prejudice" from Belice's proposed form of order.

On November 3, 2010, Barnes filed a notice of appeal.

**JURISDICTION**

The bankruptcy court's striking of "with prejudice" in the proposed form or order raises a jurisdictional issue. When a court dismisses a complaint without prejudice, the plaintiff may file an amended complaint even if the dismissal order does not expressly state that leave to amend is granted. See McCrary v. Barrack (In re Barrack), 217 B.R. 598, 603 n.4 (9th Cir. BAP 1998).[6] An order dismissing a complaint without prejudice is an

---

[6] When an order dismissing a complaint is silent as to whether the dismissal is with or without prejudice, we must determine whether the bankruptcy court intended the order to fully and finally dispose of the entire lawsuit. Mendiondo v. Centinela Hosp. Med. Ctr., 521 F.3d 1097, 1102 (9th Cir. 2008); Knevelbaard Dairies v. Kraft Foods, Inc., 232 F.3d 979, 983 (9th Cir. 2000). This is consistent with the general rule that we must look beyond the labels used by the bankruptcy court, and instead determine what effect the court intended that its order have. Disabled Rights Action Comm. v. Las Vegas Events, Inc., 375 F.3d 861, 870 (9th Cir. 2004) (citing Nat'l Distrib. Agency
(continued...)

7

interlocutory order. Id.; WMX Techs., Inc. v. Miller, 104 F.3d 1133, 1136-37 (9th Cir. 1997) (en banc).

We generally lack jurisdiction to hear an appeal from an interlocutory order, unless we grant leave to appeal. See Giesbrecht v. Fitzgerald (In re Giesbrecht), 429 B.R. 682, 687 (9th Cir. BAP 2010). Under Rule 8003, however, we may treat a notice of appeal as a motion for leave to file an interlocutory appeal. And we typically grant leave to appeal when "the order

---

[6](...continued)
v. Nationwide Mut. Ins. Co., 117 F.3d 432, 433 (9th Cir. 1997)). Under this standard, we do not treat an order dismissing a complaint as final and appealable unless the bankruptcy court clearly manifested its intent that the dismissal order be its final act in the matter. See Disabled Rights Action Comm., 375 F.3d at 870 (citing Campbell Indus., Inc. v. Offshore Logistics Int'l, Inc., 816 F.2d 1401, 1404 (9th Cir. 1987)); see also Casey v. Albertson's Inc., 362 F.3d 1254, 1258 (9th Cir. 2004)(stating that decision is not considered final for appeal purposes unless the decision: (1) fully adjudicates the issues and (2) "clearly evidences the judge's intention that it be the court's final act in the matter."). Here, there are several indications that the bankruptcy court did not intend the dismissal order to be its final act in the adversary proceeding. First and foremost, it crossed out the words "with prejudice" from Belice's proposed form of order. Further, the order dismissed the complaint, as opposed to dismissing the underlying adversary proceeding. See Disabled Rights Action Comm., 375 F.3d at 870 (citing Montes v. United States, 37 F.3d 1347, 1350 (9th Cir. 1994)). Finally, there is no indication in the record that the bankruptcy court ever determined that the lawsuit could not be saved by amendment. Id. The court never said that Barnes could not state a viable claim for relief; rather, the court said "I'm just afraid that the facts, at least after the second try, just don't support where you want to go." Hr'g Tr. (Sept. 13, 2010) at 9:2-3(emphasis added). We acknowledge that, shortly after the dismissal order was entered, a docket clerk entered on the docket a notation that the adversary proceeding was closed. This notation by itself, however, does not persuade us that the court clearly manifested its intent that the dismissal order would be its final act in the matter.

8

involves [1] a controlling question of law [2] where there is substantial ground for difference of opinion and [3] when the appeal is in the best interests of judicial economy because an immediate appeal may materially advance the ultimate termination of the litigation." Travers v. Dragul (In re Travers), 202 B.R. 624, 626 (9th Cir. BAP 1996); see also Magno v. Rigsby (In re Magno), 216 B.R. 34, 38 (9th Cir. BAP 1997) (granting leave to appeal under the Travers standard).

Here, the validity of the order appealed from involves a controlling question of law concerning the meaning of § 523(a)(2)(A)'s phrase "statement respecting the debtor's . . . financial condition." As discussed below, the meaning of that phrase is unsettled. Moreover, exercising jurisdiction here would serve the interests of judicial economy by resolving the meaning of that disputed phrase. In turn, this enables the parties to move on and address the other issues essential to the eventual disposition of the underlying adversary proceeding.

Indeed, although the bankruptcy court appears to have dismissed the Complaint without prejudice, the record before us strongly suggests that the court and Barnes had reached an impasse. Barnes over time had narrowed his focus to a single claim for relief under § 523(a)(2)(A), and the court had consistently concluded that Barnes' core allegations were insufficient to state a claim under § 523(a)(2)(A).

While the better practice would have been for Barnes, before filing his notice of appeal, to file a written notice of his election to forego any further amendments to his Complaint so that the court could enter a final judgment of dismissal of the

9

adversary proceeding, <u>WMX Techs.</u>, 104 F.3d at 1135-36, we have no trouble concluding here, under the particular circumstances of this matter, that the interests of everyone involved – Barnes, Belice and the bankruptcy court – will be best served by our hearing and deciding this appeal now. We thus grant leave to appeal.

**STANDARDS OF REVIEW AND CIVIL RULE 12(b)(6) LEGAL STANDARDS**

We review a dismissal under Civil Rule 12(b)(6) de novo. <u>See AlohaCare v. Hawaii Dept. of Human Services</u>, 572 F.3d 740, 744 n.2 (9th Cir. 2009). We also review the bankruptcy court's interpretation of the Bankruptcy Code de novo. <u>See W. States Glass Corp. of N. Cal. (In re Bay Area Glass, Inc.)</u>, 454 B.R. 86, 88 (9th Cir. BAP 2011).

When we conduct a de novo review, "we look at the matter anew, the same as if it had not been heard before, and as if no decision previously had been rendered, giving no deference to the bankruptcy court's determinations." <u>Charlie Y., Inc. v. Carey (In re Carey)</u>, 446 B.R. 384, 389 (9th Cir. BAP 2011); <u>see</u> <u>also</u> <u>B–Real, LLC v. Chaussee (In re Chaussee)</u>, 399 B.R. 225, 229 (9th Cir. BAP 2008).

As a result, in order to decide this appeal, we apply the same legal standards governing motions to dismiss under Civil Rule 12(b)(6) that apply in all federal courts. "A Rule 12(b)(6) dismissal may be based on either a 'lack of a cognizable legal theory' or 'the absence of sufficient facts alleged under a cognizable legal theory.'" <u>Johnson</u>, 534 F.3d at 1121 (quoting <u>Balistreri v. Pacifica Police Dept.</u>, 901 F.2d 696, 699 (9th Cir. 1990)).

Under Civil Rule 12(b)(6), a court must also construe the complaint in the light most favorable to the plaintiff, and must accept all well-pleaded factual allegations as true. Johnson, 534 F.3d at 1122; Knox v. Davis, 260 F.3d 1009, 1012 (9th Cir. 2001).

In both instances, the key is whether the allegations are well-pled; a court is not bound by conclusory statements, statements of law, or unwarranted inferences cast as factual allegations. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555-57 (2007). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. at 555 (citations omitted). "In practice, a complaint . . . must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." Id. at 562 (quoting Car Carriers, Inc. v. Ford Motor Co., 745 F.2d 1101, 1106 (7th Cir. 1984)).

The Court elaborated on the Twombly standard in Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009), as follows:

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. . . . A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. . . . Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.

11

*Id.* (citations and internal quotation marks omitted.)

With these standards in mind, we turn our attention to the proper construction of Barnes' claim for relief under § 523(a)(2)(A). Once we have set out the limits of § 523(a)(2)(A), we then can determine whether Barnes alleged a viable claim for relief under that provision.

## DISCUSSION

**A. The correct legal standard regarding whether misrepresentations are "statement[s] respecting the debtor's . . . financial condition."**

Section 523(a)(2)(A) excepts debts from discharge when those debts were incurred by way of "false pretenses, false representation, or actual fraud . . . ." But not all fraud leads to nondischargeability. Congress expressly excluded oral "statement[s] respecting the debtor's or an insider's financial condition" from § 523(a)(2)(A)'s coverage. In short, oral misrepresentations regarding financial condition are dischargeable.

Had Congress defined the phrase "respecting the debtor's . . . financial condition," we could easily resolve this and many other cases. But it did not, and courts have sharply differed over its proper scope. See Spencer v. Bogdanovich (In re Bogdanovich), 292 F.3d 104, 112-13 (2d Cir. 2002) (listing cases); see also Christopher W. Frost, Nondischargeability Based on Fraud: What Constitutes a "Statement Respecting the Debtor's Financial Condition?", 26 Bankr. L. Ltr. 1, 5 (Issue No. 4 April 2006) (stating that courts interpreting the scope of the phrase had divided into two camps, "one adopting a broad construction of the phrase and one adopting a narrow or strict interpretation.").

12

Those cases adopting a broad interpretation of the phrase have concluded that the phrase includes "any statement that has a bearing on the financial position of the debtor or an insider." Douglas v. Kosinski (In re Kosinski), 424 B.R. 599, 608-09 & n.8 (1st Cir. BAP 2010). This includes any statement regarding "the status of a single asset or liability," Joelson, 427 F.3d at 705, as is the case here.

Those cases adopting a narrow or strict interpretation have concluded that the phrase includes "only statements providing information as to a debtor's net worth, overall financial health, or an equation of assets and liabilities." In re Kosinski, 424 B.R. at 609.

The Ninth Circuit Court of Appeals has not expressly stated whether it interprets the controversial phrase broadly or narrowly. However, in at least one decision, it held that a debtor's statement regarding the value of and encumbrances against proposed collateral for a loan was not, by itself, a statement respecting the debtor's financial condition within the meaning of § 523(a)(2)(A): "For present purposes it is enough to point out that the statement we are considering did not purport to set forth the debtors' net worth or overall financial condition, so our analysis must revolve around 11 U.S.C. § 523(a)(2)(A)." In re Kirsh, 973 F.2d at 1457.

While Kirsh did not expressly state whether the phrase "statement respecting financial condition" should be interpreted broadly or narrowly in all contexts, it would be difficult if not impossible to reconcile Kirsh's specific holding with a broad interpretation of that phrase. Kirsh used language – "debtors'

13

net worth or overall financial condition" – which closely mirrors the language that the strict interpretation courts have used. Moreover, had <u>Kirsh</u> applied a broad interpretation, it likely would have concluded that the statement regarding the value of and encumbrances against the proposed collateral was a statement respecting the debtor's financial condition, as other broad interpretation courts have concluded, and reached a different result. <u>See, e.g.</u>, <u>Engler v. Van Steinburg (In re Van Steinburg)</u>, 744 F.2d 1060, 1061 (4th Cir. 1984); <u>Beneficial Nat'l Bank v. Priestley (In re Priestley)</u>, 201 B.R. 875, 882 (Bankr. D. Del. 1996).

The most recent circuit-level opinion addressing the issue is <u>In re Joelson</u>, 427 F.3d at 700. After considering the language and structure of the Code, the legislative history leading up to the enactment of § 523(a)(2)(A) and (B), and the decisions of other courts, <u>Joelson</u> concluded that the phrase should be interpreted narrowly. <u>Id.</u> at 714. <u>Joelson</u> provides a good analytic framework for analyzing the issues in this case.

**1. Contextual Reading of Statute**

<u>Joelson</u> initially read § 523(a)(2)(A) in the context of the entire Code. <u>Id.</u> at 706-07. Although admitting, as it had to, that the Code does not define the phrase "respecting the debtor's . . . financial condition," the court observed that § 101(32)'s definition of "insolvent" <u>does</u> use the phrase "financial condition," and uses it to describe the <u>overall</u> financial health of the debtor. As <u>Joelson</u> noted, "[t]he Code defines 'insolvent' as, inter alia, the '<u>financial condition</u> such that the sum of [an] entity's debts is greater than all of such

14

entity's property ... exclusive of [certain types] of property.'" Id. at 706 (quoting 11 U.S.C. § 101(32)(A)) (emphasis in original). This usage of the "financial condition" phrase provides "tangential support" for a strict interpretation of the phrase "respecting the debtor's . . . financial condition." Id.

Joelson's second contextual argument is more to the point. The court noted that the Code treats financial condition misrepresentations very differently depending on whether these representations are oral or written. Id. at 707. As Joelson explained, this difference in treatment makes sense only to the extent Congress meant financial condition misrepresentations to refer to statements about one's overall financial position, rather than to statements about a specific asset or liability:

> [I]t is logical to give more leeway (and more dischargeability) to a debtor who errs in stating his or her overall position orally, since it is more likely that he or she may have made a mistake inadvertently. It is also logical to give less leeway to a debtor who makes a specific oral misrepresentation as to a particular asset, because it is less likely that such a misrepresentation is inadvertent. By the same token, it is logical to give little leeway (and less dischargeability) under § 523(a)(2)(B) to a debtor who fraudulently misstates his or her overall financial position in writing, since such communications carry an air of formality that their oral counterparts do not and are typically made after more studied consideration.

Id.

Against this analysis, the court acknowledged that Congress intended § 523(a) to serve as a comprehensive scheme of exceptions to discharge to further the cornerstone policy embodied in the Bankruptcy Code "of affording relief only to the 'honest but unfortunate debtor.'" Cohen v. De La Cruz, 523 U.S. 213, 217 (1998) (quoting Grogan v. Garner, 498 U.S. 279, 287

15

(1991)).  The broad interpretation of the financial condition phrase would expand the types of dishonestly incurred debts that could be discharged, in apparent contrast to the central principal favoring honest debtors.

### 2.    Legislative History

Joelson next examined the legislative history leading up to enactment of § 523(a)(2)(A) and (B), mirroring in many respects the Supreme Court's detailed account of this same history in Field v. Mans, 516 U.S. 59 (1995).  Both Field and Joelson explained that the origins of § 523(a)(2)(A) and (B) date back to the turn of the Twentieth Century.  Field, 516 U.S. at 64-65; Joelson, 427 F.3d at 707-08.  As of 1903, the precursor to § 523(a)(2)(A) provided for the nondischargeability of debts arising from any oral misrepresentation.  Field, 516 U.S. at 65-66; Joelson, 427 F.3d at 708.

In 1903, Congress added the precursor to § 523(a)(2)(B).  This section denied the debtor's discharge as to all of his or her debts to the extent he or she used a materially false written statement to obtain an extension of credit.  Field, 516 U.S. at 65; Joelson, 427 F.3d at 708.  Notably, neither the debtor's deceptive intent nor the creditor's reliance were prerequisites to the denial of the debtor's discharge under this provision. Field, 516 U.S. at 65.

By 1960, it became apparent to Congress that some creditors were abusing the existing system by reaping a windfall at the expense of the debtor and other creditors.  Joelson, 427 F.3d at 708.  These creditors were encouraging or otherwise inducing their borrowing clientele to issue less than complete and

16

accurate financial statements, thereby effectively enabling those creditors to render amounts owed to them bankruptcy-proof; such creditors later could coerce payment notwithstanding the filing of a bankruptcy by using previously-submitted inaccurate financial statements to raise the specter of the complete denial of the debtor's discharge. Id. Accordingly, in 1960 Congress amended the Bankruptcy Act to combine the precursor to § 523(a)(2)(B) with the precursor to § 523(a)(2)(A). Field, 516 U.S. at 66 n.6; Joelson, 427 F.3d at 708.

To this combination Congress added intent and reliance requirements. Field, 516 U.S. at 66 n.6; Joelson, 427 F.3d at 708.[7] As noted in Field:

> Thus, as of 1960 the relevant portion of § 17(a)(2) provided that discharge would not release a bankrupt from debts that
>
> > are liabilities for obtaining money or property by false pretenses or false representations, or for obtaining money or property on credit or obtaining an extension or renewal of credit in reliance upon a materially false statement in writing respecting [the bankrupt's] financial condition made or published or caused to be made or published in any manner whatsoever with intent to deceive.

Field, 516 U.S. at 66 n.6 (quoting Act of July 12, 1960, Pub.L. 86-621, 74 Stat. 409) (emphasis added).

The 1960 amendments did not provide for any divergent

---

[7]As one commentator stated, "[t]his history of increasing limits placed on nondischargeability based on false statements respecting the debtor's financial condition indicates congressional intent to narrow the reach of Section 523(a)(2)(B)." Frost, supra, at 5. The broad interpretation, of course, accomplishes the exact opposite result by bringing more misrepresentations within the ambit of § 523(a)(2)(B).

17

treatment of debts incurred through the use of false <u>oral</u> statements concerning a debtor's financial condition. Furthermore, the legislative history accompanying the 1960 amendments made reasonably clear that the new phrase "materially false statement in writing respecting [the bankrupt's] financial condition" was meant to refer to formal written financial statements, by its repeated reference to "financial statements" when describing the purpose and effect of the revised statute. See <u>Joelson</u>, 427 F.3d at 708-09. Indeed, in reviewing this same legislative history, <u>Field</u> used interchangably the phrases "financial statements," "written statement[s] of financial condition" and "statement[s] in writing respecting [the bankrupt's] financial condition" thereby suggesting that it viewed the meaning of these phrases as at least roughly synonymous. <u>Field</u>, 516 U.S. at 65-66.

The legislative history of the 1978 Code is silent on why the new statute expressly excepted oral statements respecting the debtor's financial condition from coverage under § 523(a)(2)(A). But as <u>Joelson</u> pointed out, this same legislative history reflected a general intent to maintain existing law, see <u>Joelson</u>, 427 F.3d at 709, and not exempt a significant class of misrepresentations from the Code's scheme of nondischargeable debts. <u>Id.</u>

> [T]here is no indication in the legislative history that Congress intended to remove from the coverage of § 523(a)(2)(A) any of the debts based on oral misrepresentations going to financial condition that had been within the coverage of that provision's predecessors.

<u>Id.</u>

The Revision Notes accompanying the 1978 enactment of the Bankruptcy Code support Joelson's account of the legislative history. Those Revision Notes state that § 523(a)(2) "is modified only slightly from current section 17(a)(2)." H.R. Rep. No. 95-595, at 364 (1977). The Revision Notes describe both the general coverage of § 523(a)(2) and the substantive changes from prior § 17(a)(2), and neither of those descriptions mention anything about § 523(a)(2)(A)'s new exception from coverage. In short, it would have been exceedingly odd for Congress to have made a significant change in the substantive law's coverage without even mentioning it in this context.

### 3. Existing Case Law

After making the same observations about Field as we make above, Joelson discussed the decisions of other courts that have chosen between the broad and narrow interpretation of the phrase "statement respecting the debtor's . . . financial condition." Joelson, 427 F.3d at 710-14; see also Skull Valley Band of Goshute Indians v. Chivers (In re Chivers), 275 B.R. 606, 614 (Bankr. D. Utah 2002); Weiss v. Alicea (In re Alicea), 230 B.R. 492, 502-04 (Bankr. S.D.N.Y. 1999).

On the opposing side, the seminal decision opting for the broad approach is In re Van Steinburg, 744 F.2d at 1060-1061. Van Steinburg is very short, and so we easily can quote the full extent of its reasoning:

> Concededly, a statement that one's assets are not encumbered is not a formal financial statement in the ordinary usage of that phrase. But Congress did not speak in terms of financial statements. Instead it referred to a much broader class of statements – those "respecting the debtor's . . . financial condition." A debtor's assertion that he owns certain property free

19

and clear of other liens is a statement respecting his financial condition. Indeed, whether his assets are encumbered may be the most significant information about his financial condition. Consequently, the statement must be in writing to bar the debtor's discharge.

Id. at 1061.

In our view, Van Steinberg and its progeny base their decision on an oversimplified version of plain-meaning analysis. Without considering the relationship of the phrase in question to the contextual statutory scheme or the logical impact of their broad interpretation on that scheme, they improperly emphasize one meaning of the words to the exclusion of all other considerations. See Corley v. United States,129 S.Ct. 1558, 1567 n.5 (2009).[8]

Based on the foregoing analysis, we hold that the phrase "statement respecting the debtor's . . . financial condition" should be narrowly interpreted. We agree with Joelson's conclusion that such statements "are those that purport to present a picture of the debtor's overall financial health."

---

[8] We acknowledge that some courts have rejected Joelson's approach in favor of Van Steinberg's. See, e.g., Jacobs v. Versa Corp. (In re Jacobs),2011 WL 5313825, at ** 4-5 (Bankr. E.D. Mich. 2011); Material Prods. Int'l, Ltd. v. Ortiz (In re Ortiz), 441 B.R. 73, 82-83 (Bankr. W.D. Tex. 2010). However, Van Steinberg and its progeny collectively bring into focus another concern that we have with the broad interpretation: that is, it is difficult to conceive of any false representation regarding an asset or a particular financial condition that could justifiably induce "an extension, renewal or refinancing of credit" that would not also be a "statement respecting the debtor's . . . financial condition" under the broad interpretation. And yet the plain language of § 523(a)(2) contemplates on its face the existence of such representations, even if the broad interpretation renders them all but inconceivable.

20

Joelson, 427 F.3d at 714. As Joelson put it:

> Statements that present a picture of a debtor's overall financial health include those analogous to balance sheets, income statements, statements of changes in overall financial position, or income and debt statements that present the debtor or insider's net worth, overall financial health, or equation of assets and liabilities. . . . What is important is not the formality of the statement, but the information contained within it – information as to the debtor's or insider's overall net worth or overall income flow.

Id.[9]

In this appeal, the bankruptcy court never expressly stated whether it was applying a broad or narrow interpretation of the financial condition phrase. Nonetheless, the court's rulings granting all three of Belice's motions to dismiss, as described in the court's last order, are inconsistent with a narrow interpretation of the financial condition phrase. Moreover, the court's comments at the hearing on Belice's last motion to dismiss suggest that the court declined to follow Joelson. Shortly after Barnes argued that the court should follow both

---

[9] Two of our prior opinions, In re Barrack, 217 B.R. at 598; and Medley v. Ellis (In re Medley), 214 B.R. 607 (9th Cir. BAP 1997), involved the issue of whether certain alleged misrepresentations qualified as statements respecting the debtor's financial condition within the meaning of § 523(a)(2)(A) and (B). But neither opinion decided the issue. Barrack accepted without any review the bankruptcy court's determination that the statements therein were "respecting the debtor's . . . financial condition" because the appellant did not challenge that determination on appeal. In re Barrack, 217 B.R. at 605. Meanwhile, in Medley, we acknowledged the controversy over the broad versus the narrow interpretation of the phrase "respecting the debtor's . . . financial condition," but we explained that we did not need to decide which interpretation to apply because at least some of the debtor's alleged misrepresentations would have qualified under either interpretation. In re Medley, 214 B.R. at 612.

21

Kirsh and Joelson, the following colloquy took place:

> The Court: I understand what you want to do. I understand how frustrating it is when you borrow money from somebody and they don't pay it back; and they said all these great things are going to happen. But they've got to fit within the four corners of the statute. And Congress wrote those intentionally.
>
> And I'm just afraid that the facts, at least after the second try, just don't support where you want to go.
>
> Ms. Crothall: I understand. I just -- I -- our contentions, I believe, fall squarely under the Joelson case in the 10th Circuit, your honor. And I've made my argument.
>
> \* \* \*
>
> The Court: Motion to dismiss will be granted.

Hr'g Tr. (Sept. 13, 2010) at 8:21-9:9.

The bankruptcy court thus rejected Joelson and implicitly adopted the broad interpretation of the phrase "respecting the debtor's . . . financial condition."  The bankruptcy court erred in doing so.

**B.   Under the narrow interpretation, Belice's alleged misrepresentations do not qualify as "statement[s] respecting the debtor's . . . financial condition."**

Even though we have concluded that the bankruptcy court applied the incorrect legal standard, we nonetheless could affirm its order if Belice's alleged misrepresentations qualified as statements respecting the debtor's financial condition under the proper legal standard.  See generally Johnson, 534 F.3d at 1121 (holding that appellate court can affirm the trial court on any basis supported by the record); Leavitt v. Soto (In re Leavitt), 171 F.3d 1219, 1223 (9th Cir. 1999) (same).

But Belice's misrepresentations do not qualify as financial condition statements.  Barnes alleged in his Complaint that

22

Belice had made the following misrepresentations:

a) Debtor's monthly salary as an attorney . . . was $30,000;

b) Debtor had made a $100,000 profit on the sale of his La Jolla residence in 2007;

c) Debtor was paying $7,000 per month in rent which he could well afford;

d) Debtor was a San Diego Charger[sic] season ticket holder;

e) Debtor had purchased a $28,000 diamond engagement ring in July 2007;

f) Debtor voluntarily left [his law firm] in late 2007 because of more lucrative income in the luxury transportation sector (helicopter and jet service) and his involvement with a computer systems company;

g) The security for Plaintiff's loan would be a partial ownership interest in the BELICE-MEHTA PARTNERSHIP, an investor in an entertainment establishment in Macau, called the Monkey Bar;

h) The Monkey Bar was extremely successful, would likely be sold to the Sands Casino company in 2008, and would provide the Debtor with yet another revenue source; and

i) Debtor's interest in the BELICE-MEHTA PARTNERSHIP was worth far more than the loan from the Plaintiff to the Debtor.

Statements a, b, c and f relate to Belice's income and expenses, but they simply cannot be conceived as akin to any sort of complete or comprehensive statement of income and expenses. While these alleged misrepresentations reflect some aspects of Belice's historical income and expenses, they do not either separately or when taken together reflect his overall cash flow situation, his overall income and expenses, or the relative values and amounts of his assets and liabilities. Cf. Joelson, 427 F.3d at 715 ("a statement about one part of Joelson's income

23

flow . . . does not reflect Joelson's overall financial health.").

Statements d, e, g, h and i relate to a handful of Belice's assets, but they do not reveal anything meaningful or comprehensive about his overall net worth. These statements do not purport to reflect all of Belice's assets, and they tell us nothing regarding his liabilities or any liens against any of his property. Cf. Id. at 714-15 (holding that statements regarding some of the assets that Joelson claimed to own did not constitute "a statement as to Joelson's overall financial health analogous to a balance sheet, income statement, statement of changes in financial position, or income and debt statement.").

Accordingly, under our interpretation of the financial condition phrase, Belice's alleged misrepresentations do not amount to a statement respecting his financial condition. At most, they are isolated representations regarding various items that might ultimately be included as assets in a balance sheet or in a statement of net worth. The bankruptcy court thus erred when it ruled that Barnes had not stated and could not state a claim for relief under § 523(a)(2)(A), and we must reverse.

**C. Fraudulent Omission**

In addition to Belice's affirmative representations, Barnes argued that Belice committed fraud by failing to disclose a significant liability. In particular, Barnes vigorously argues on appeal that, contrary to the bankruptcy court's ruling, Belice's alleged failure to disclose the $530,000 Running Horse Liability was an actionable fraudulent omission.

24

A claim for relief based on a fraudulent omission must allege facts that, if proven, demonstrate that the defendant had a duty to disclose the omitted information. See Citibank (South Dakota), N.A. v. Eashai (In re Eashai), 87 F.3d 1082, 1089 (9th Cir. 1996) (stating that an omission can be fraudulent and actionable under § 523(a)(2)(A) when the debtor had a duty to disclose the omitted facts).

Section 551 of the Restatement (Second) of Torts provides in relevant part:

> (2) One party to a business transaction is under a duty to exercise reasonable care to disclose to the other before the transaction is consummated,
>
>     *     *     *
>
>     (b) matters known to him that he knows to be necessary to prevent his partial or ambiguous statement of the facts from being misleading;
> . . . .

Id.[10] The comments accompanying Restatement § 551 explain the

[10] We ordinarily look to the Restatement (Second) of Torts for guidance in determining what constitutes a fraudulent nondisclosure for purposes of § 523(a)(2)(A). See Apte v. Romesh Japra, M.D., F.A.C.C., Inc. (In re Apte), 96 F.3d 1319, 1324 (9th Cir. 1996); Tallant v. Kaufman (In re Tallant), 218 B.R. 58, 64-65 (9th Cir. BAP 1998) (citing Field, 516 U.S. at 68-70).
The Restatement (Second) of Contracts also is instructive when, as here, the alleged misrepresentation arises in the context of contractual relations. The Restatement (Second) of Contracts provides in relevant part:

A person's non-disclosure of a fact known to him is equivalent to an assertion that the fact does not exist in the following cases only:
*    *    *
    (b) where he knows that disclosure of the fact would correct a mistake of the other party as to a
(continued...)

25

meaning of clause (b) as follows: "[a] statement that is partial or incomplete may be a misrepresentation because it is misleading, <u>when it purports to tell the whole truth and does not</u>." <u>Id.</u> at cmt. g (emphasis added).

Barnes' brief did not cite to any duty to disclose the Running Horse Liability. Barnes' attorney could not point us to one when asked at oral argument. Without any such duty to disclose, no implied representation can be found in Belice's silence. Without a false representation, there can be no fraud. The bankruptcy court was correct to accept Belice's argument on this point.

**CONCLUSION**

For all of the foregoing reasons, the bankruptcy court's order is REVERSED. This matter shall be REMANDED for further proceedings consistent with this opinion.

---

[10](...continued)
basic assumption on which that party is making the contract and if non-disclosure of the fact amounts to a failure to act in good faith and in accordance with reasonable standards of fair dealing.

Restatement (Second) of Contracts § 161 (1981).