NOT FOR PUBLICATION

**UNITED STATES BANKRUPTCY APPELLATE PANEL**

**OF THE NINTH CIRCUIT**

| | |
|---|---|
| In re: ) | BAP No.   AZ-12-1631-KuDPa |
| ) | |
| DAVID HARRY DUDLEY, ) | Bk. No.   07-04223 |
| ) | |
| Debtor. ) | |
| _____) | |
| ) | |
| DAVID HARRY DUDLEY, ) | |
| ) | |
| Appellant, ) | |
| ) | |
| v. ) | **MEMORANDUM**[*] |
| ) | |
| RITA ANN SIMMONS, ) | |
| ) | |
| Appellee.[**] ) | |
| _____) | |

Submitted Without Argument
on January 23, 2014[***]

Filed – February 26, 2014

Appeal from the United States Bankruptcy Court
for the District of Arizona

Honorable Redfield T. Baum, Sr., Bankruptcy Judge, Presiding

_____

[*]This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have (see Fed. R. App. P. 32.1), it has no precedential value. See 9th Cir. BAP Rule 8013-1.

[**]The notice of appeal named Rita Ann Simmons as a party, and thus Simmons has been listed as an appellee herein.  However, Simmons has not filed a responsive brief or otherwise actively participated in this appeal.

[***]By order entered August 14, 2013, this appeal was deemed suitable for submission without oral argument.

Appearances:    Harold E. Campbell of Campbell & Coombs, P.C., on brief, for appellant David Harry Dudley.****

Before: KURTZ, DUNN and PAPPAS, Bankruptcy Judges.

## INTRODUCTION

Debtor David Harry Dudley appeals from an order granting the motion filed by his ex-wife, Rita Ann Simmons, seeking dismissal of his chapter 13[1] bankruptcy case.

Dudley's arguments ignore that, at the time of dismissal, the full sixty-month term of his confirmed chapter 13 plan had elapsed, and that he had materially defaulted on his plan obligation to pay Simmons' secured claim.  Moreover, Dudley admitted that he had no ability to cure this default, or to otherwise propose a legally permissible plan modification.

Not being entitled to a chapter 13 discharge and having run through all of the time afforded to him under his confirmed sixty-month chapter 13 plan, no legitimate bankruptcy purpose would have been served by the preservation of his chapter 13 bankruptcy case.  Accordingly, dismissal was appropriate, and we AFFIRM.

## FACTS

The relevant facts are not in dispute.  Dudley and Simmons were parties to contentious divorce proceedings in the Maricopa County Superior Court (Case No. FN2005-091838).  The divorce

---

****Campbell filed an opening appeal brief on Dudley's behalf, but he thereafter sought and obtained this Panel's permission to withdraw as counsel for Dudley.

[1]Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532.

2

proceedings led to a dissolution decree issued on May 3, 2007. The dissolution decree contained provisions dividing the parties' marital assets and, in relevant part, awarded the parties' former family residence to Dudley as his sole and separate property. In turn, the decree awarded Simmons a lien on the residence to secure Dudley's obligation to pay Simmons $208,000, which was Simmons' share of the equity in the residence.[2]

Dudley appealed the dissolution decree, and the Arizona Court of Appeals affirmed the decree in part and reversed it in part. See Simmons v. Dudley, 2009 WL 936886 (Ariz. Ct. App. 2009). Among other things, Dudley challenged on appeal Simmons' entitlement to the $208,000 lien against the residence, claiming that the trial court erred when it characterized the residence as community property. But the Court of Appeals affirmed this aspect of the decree. See id. at 3-5.

In August 2007, shortly after the state court issued the dissolution decree, Dudley commenced his chapter 13 bankruptcy case. According to Dudley's initial bankruptcy schedules,

---

[2]Even though the bankruptcy court's dismissal of Dudley's bankruptcy case explicitly was based on the "entire record," Dudley's excerpts of record only included a handful of documents from the bankruptcy court record. This made our task of reviewing the dismissal more difficult. Even so, when the excerpts of record are incomplete, we can and do look at other record documents otherwise readily available to us by accessing the bankruptcy court's electronic docket and the imaged documents attached thereto. See O'Rourke v. Seaboard Sur. Co. (In re E.R. Fegert, Inc.), 887 F.2d 955, 957-58 (9th Cir. 1989)(holding that BAP can take judicial notice of contents of bankruptcy court record); see also Ehrenberg v. Cal. St. Univ. (In re Beachport Entm't), 396 F.3d 1083, 1087-88 (9th Cir. 2005)(holding that BAP erred by not determining appeal on the merits, when all necessary parts of the record were readily available).

3

Simmons held an undisputed general unsecured claim in the amount of $212,904, as well as a $208,000 claim secured by her judgment lien against the residence. Dudley's initial schedules further reflected that, aside from Simmons, Dudley had only a handful of other unsecured creditors, and that the unsecured debt owed to Simmons was almost ten times the amount of all of Dudley's other unsecured debt combined. Furthermore, the chapter 13 trustee later reported, at one of the hearings on Simmons' case dismissal motion, that Simmons was Dudley's only remaining unsecured creditor, all others having had their claims disallowed.

In the initial version of Dudley's chapter 13 plan, Dudley attempted to partially avoid Simmons' $208,000 judgment lien under § 522(f). Both Simmons and the chapter 13 trustee objected to this provision of the plan, pointing out that it was improper for the debtor to attempt to avoid a lien by plan provision. In response, Dudley filed a motion to avoid the judgment lien under § 522(f). The bankruptcy court denied this motion based on Farrey v. Sanderfoot, 500 U.S. 291 (1991). Dudley did not appeal this ruling.

Debtor filed a first amended plan and a second amended plan, both of which provided for Simmons to retain her lien. But neither plan provided any payment to Simmons on account of her secured claim over the course of the plan. Simmons objected, arguing that § 1325(a)(5) required Dudley to pay Simmons' secured claim during the course of the plan. After the parties fully briefed the issue, the bankruptcy court entered an order sustaining Simmons' objection. Dudley did not appeal this ruling either.

4

Dudley's third amended plan finally provided for both Simmons' lien and for the payment of her secured claim during the course of the plan, as follows:

> Rita Ann Simmons has a divorce judgment lien of $208,000.00 secured by the real property to secure the payment of her share of the equity in the real property. She will retain this lien on the real property until the payment of the underlying debt under nonbankruptcy law. Debtor will refinance the real property between months 48-60 of the Plan and pay this debt in full. Due to the falling value of the real property, Debtor cannot refinance the house for enough to pay this debt until house values appreciate again, which is not expected until at least month 48 of the Plan.

Third Amended Plan (Feb. 9, 2009) at p. 3 of 5.

Shortly after the filing of the third amended plan, the Arizona Court of Appeals issued its decision affirming in part and reversing in part the dissolution decree. In re Marriage of Simmons v. Dudley, 2009 WL 936886 (Ariz. Ct. App. 2009). Because the Court of Appeals decision effectively relieved Dudley from the duty to pay certain priority domestic support obligations, Dudley filed his fourth amended plan to address the impact of the Court of Appeals decision on these obligations. The Court of Appeals decision did not alter Simmons' lien and secured claim, and the fourth amended plan generally provided for the same treatment of them. Nonetheless, the fourth amended plan contained a new, additional sentence regarding the parties' rights and duties in the event that Dudley was unable to refinance the residence, as follows:

> In the event Debtor cannot refinance the house, he retains the option to sell the house (in months 48-60) and pay Rita Simmons her $208,000; if the house does not sell for enough to pay her the $208,000, any remaining debt to her will be a general unsecured debt.

5

Fourth Amended Plan (July 7, 2009) at p. 3 of 5.

Simmons objected to this new contingency provision. According to Simmons, this was just another improper attempt by Dudley to evade the dictates of § 1325(a)(5), which required Dudley to obtain Simmons' consent to the plan, to surrender the residence to Simmons, or to provide for Simmons' retention of her lien and the payment of her secured claim.

The bankruptcy court sustained Simmons' objection, and Dudley filed a motion for reconsideration arguing that, by not allowing Dudley to retain the residence during the course of the plan without providing for payment in full of Simmons' secured claim, the court effectively was declaring the secured debt nondischargeable. Simmons countered that Dudley was not being denied his discharge so long as he presented and fully consummated a confirmable chapter 13 plan – something Dudley so far had been unwilling or unable to do.

Before the bankruptcy court ruled on the reconsideration motion, the parties reached agreement on the language regarding the treatment of Simmons' lien and her secured claim, which language was included in a stipulated order confirming Dudley's fourth amended chapter 13 plan. That language was almost identical to the language in Dudley's third amended plan, except that the following additional sentence was added:

> By virtue of this paragraph, Debtor is not waiving his right to seek modification of the plan later under 11 U.S.C. 1329, if appropriate.

Stipulated Order (May 9, 2010) at p. 2 of 4. In essence, Dudley had capitulated on his attempt to include in the plan a contingency provision in the event he was unable to pay off

6

Simmons' secured claim by refinancing the residence.

The bankruptcy court entered the stipulated confirmation order in May 2010. In February 2011, Dudley filed a motion seeking to modify his confirmed chapter 13 plan. In the motion Dudley advised the court that, on remand from the Arizona Court of Appeals, the trial court entered another judgment in favor of Simmons and against Dudley, this one for $45,000 in attorney fees incurred by Simmons in the dissolution proceedings. Dudley asserted that the $45,000 judgment, along with the $212,904 he originally scheduled as unsecured debt owing to Simmons, all constituted prepetition divorce-related debt covered by § 523(a)(15) that was dischargeable in chapter 13 pursuant to § 1328(a)(2).

Simmons objected to the plan modification motion, arguing that the $45,000 judgment constituted a domestic support obligation within the meaning of § 523(a)(5) and hence was nondischargeable under § 1328(a)(2). Simmons also contended that at least a portion of the $45,000 in attorney fees was incurred postpetition.

The chapter 13 trustee also filed a response to the motion to modify the plan, pointing out that the confirmed plan required Dudley to turn over to the trustee copies of his 2008, 2009 and 2010 tax returns, and also turn over any net tax refunds associated with those returns. At the time, the trustee only had received copies of Dudley's 2008 tax returns, and Dudley had never paid over to the trustee his 2008 tax refunds in the aggregate amount of $7,382.

The parties reached agreement on language modifying the

7

fourth amended chapter 13 plan, which language was incorporated into a stipulated order confirming the modified chapter 13 plan. In relevant part, the agreed-upon modification language required Dudley to pay to Simmons, within 90 days, $3,000 of the $45,000 judgment, which $3,000 the parties agreed constituted postpetition attorney fees ("Postpetition Fee Award"). The agreed-upon modification language further required Dudley to pay over to the trustee before the end of month 60 of his chapter 13 plan the $7,382 owed to the trustee on account of the 2008 tax refunds ("Tax Refund Payment"). The bankruptcy court entered the stipulated order in August 2011.

Dudley failed to pay the Postpetition Fee Award, the Tax Refund Payment or any amount on account of Simmons' secured claim. Consequently, in September 2012, Simmons filed a motion to dismiss based on Dudley's default on these three obligations.

Dudley filed a response to the dismissal motion in which he conceded that the three required payments had not been made. However, he claimed that none of these payment defaults, either jointly or severally, justified dismissal of his bankruptcy case. The Tax Refund Payment, Dudley explained, was supposed to be funded from his 2011 and 2012 tax refunds, and neither his 2011 tax return nor his 2012 tax return had yet been filed through no fault on his part. Similarly, Dudley contended that his failure to pay Simmons' secured claim was not his fault, but rather was the result of the residence not being of sufficient value to permit him to refinance. Finally, Dudley argued that, even though the stipulated order confirming his modified fourth amended plan required him to pay the Postpetition Fee Award,

8

payment of that award technically was not part of his chapter 13 plan (because it was the payment of a postpetition debt), so the nonpayment of the award should not be grounds for case dismissal.

The bankruptcy court held two hearings on the motion to dismiss. Dudley once again conceded that he had not made the three required payments and once again argued that none of these defaults justified dismissal of his bankruptcy case. He further admitted that he had no ability to pay Simmons' secured claim. The chapter 13 trustee also appeared, and he confirmed that Simmons was Dudley's only remaining unsecured creditor.

The bankruptcy court gave the parties an opportunity to negotiate a consensual resolution of their differences regarding the defaults. But when the parties' negotiations proved unsuccessful, the bankruptcy court issued a minute entry/order granting Simmons' dismissal motion.[3] According to the court, payment of Simmons' secured claim was "one of the most significant parts" of Dudley's chapter 13 plan, and Dudley's failure to pay that claim constituted a material plan default within the meaning of § 1307(c)(6). Therefore, the bankruptcy court concluded, based on that default and the entire record, dismissal of the case was appropriate.

---

[3]In his appeal brief, Dudley stated that, among other things, he offered to deed the property to Simmons. This statement is misleading in its incompleteness. The record reflects that, at the time of the dismissal hearings, Dudley was not willing to immediately surrender the residence, but rather sought to retain the residence for several additional months in exchange for his promise to pay rent to Simmons. After being held at bay during the five years of the plan, and having not been paid on a number of the obligations Dudley owed her, we can understand why Simmons found Dudley's offer unacceptable.

9

On November 30, 2012, the bankruptcy court entered an order dismissing Dudley's bankruptcy case, and on December 11, 2012, Dudley timely appealed.

## JURISDICTION

The bankruptcy court had jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(A). We have jurisdiction under 28 U.S.C. § 158.

## ISSUE

Did the bankruptcy court err when it dismissed Dudley's bankruptcy case?

## STANDARDS OF REVIEW

We review the bankruptcy court's dismissal of a chapter 13 bankruptcy case for an abuse of discretion. See Ellsworth v. Lifescape Med. Assocs., P.C. (In re Ellsworth), 455 B.R. 904, 914 (9th Cir. BAP 2011). Under the abuse of discretion standard of review, we first "determine de novo whether the [bankruptcy] court identified the correct legal rule to apply to the relief requested." United States v. Hinkson, 585 F.3d 1247, 1262 (9th Cir. 2009) (en banc). And if the bankruptcy court applied the correct legal rule, we then determine whether the court's factual findings were: "(1) illogical, (2) implausible, or (3) without support in inferences that may be drawn from the facts in the record." Id. (internal quotation marks omitted).

## DISCUSSION

A bankruptcy court may dismiss a chapter 13 bankruptcy case only if the interested party requesting dismissal establishes two things: (1) "cause" for dismissal; and (2) that dismissal is in the best interests of creditors and the estate. See § 1307(c);

10

Nelson v. Meyer (In re Nelson), 343 B.R. 671, 675 (9th Cir. BAP 2006); see also In re Ellsworth, 455 B.R. at 918.[4]

Here, the record amply supported the bankruptcy court's finding of "cause" under § 1307(c)(6). That provision specifies that a "material default by the debtor with respect to a term of a confirmed plan" constitutes cause for dismissal or conversion. Dudley conceded in both the bankruptcy court and in his appeal brief that his plan required payment of Simmons' secured claim and that he did not pay that claim as required. Nor has Dudley explicitly argued that this default was immaterial. Indeed, he conceded at the second dismissal hearing that he had materially defaulted on his plan obligations.

Dudley does, however, argue that the default was not his fault, that it resulted from an unexpected failure of the Phoenix housing market to recover after the recession and mortgage crisis this country experienced in and after 2007. Additionally, we

---

[4]Ordinarily, the bankruptcy court also must consider conversion to chapter 7 as an alternative to dismissal. See In re Nelson, 343 B.R. at 675. The bankruptcy court here did not explicitly do so. But no purpose would be served in remanding for explicit consideration of conversion. None of the interested parties desired or advocated for conversion in lieu of dismissal. Indeed, Dudley obviously did not want his case converted to chapter 7 because a chapter 7 discharge would be of no practical use to him. Most of the debt he owed to Simmons was non-support, divorce-related debt, which is not dischargeable in chapter 7 cases but is dischargeable in chapter 13. See §§ 523(a)(15), 1328(a)(2). Under these circumstances, we decline to further address the issue of conversion. See generally United Student Aid Funds, Inc. v. Espinosa, 559 U.S. 260, 270 n.9 (2010) (declining to address issue not raised "in the courts below"); Barnes v. Belice (In re Belice), 461 B.R. 564, 569 n.4 (9th Cir. BAP 2011) (holding that BAP did not need to decide arguments not raised in the bankruptcy court or on appeal).

11

acknowledge the opinion of one leading treatise that, "[w]hen the default is caused by unexpected circumstances beyond the debtor's control <u>that have been remedied</u>, the court may find that it is not a material default." 8 Collier on Bankruptcy ¶ 1307.04[6] (Alan N. Resnick & Henry J. Sommer eds., 16th ed. 2013)(emphasis added).

We reject Dudley's argument on factual grounds. Dudley's inability to refinance was not unanticipated. Dudley clearly knew that it was possible that the housing market might not recover sufficiently to enable him to repay Simmons' secured claim by refinancing the residence. In fact, Dudley sought to address this contingency by attempting to add a provision providing alternate treatment for Simmons' secured claim in the event he was unable to repay this claim by refinancing. But both Simmons and the bankruptcy court rejected this proposed alternate plan treatment because it did not provide for payment in full of Simmons' secured claim as required by § 1325(a)(5). And ultimately Dudley abandoned his proposed alternate treatment.

Additionally, Dudley never remedied the default. He never even attempted to suggest or propose a means of satisfying his plan obligation to fully pay Simmons' secured claim after he defaulted on that obligation.

We also reject Dudley's argument on legal grounds. In essence, Dudley contends that his unanticipated inability to pay Simmons' secured claim should absolve him of his plan obligation to pay that claim. This contention is simply wrong. The plan terms were binding on both Dudley and Simmons. <u>See</u> § 1328(a); <u>Brawders v. Cnty. of Ventura (In re Brawders)</u>, 503 F.3d 856, 867

12

(9th Cir. 2007) (citing § 1327); Max Recovery, Inc. v. Than (In re Than), 215 B.R. 430, 435 (9th Cir. BAP 1997). And any doubt regarding the meaning of the plan's terms is interpreted against Dudley as the plan proponent. See 8 Collier on Bankruptcy, supra, at ¶ 1328.02. Here, the confirmed plan, and all of Dudley's failed pre-confirmation attempts to obtain relief from his obligation to pay Simmons' secured claim, convince us that Dudley's confirmed plan obligated Dudley to pay Simmons' secured claim regardless of whether he was able to refinance the residence. This also is how the bankruptcy court interpreted the plan. In sum, on this record, we conclude that the bankruptcy court's material default finding was not clearly erroneous.

The record also establishes that dismissal was in the best interests of Dudley's creditors and the estate. By the time of the dismissal hearings, Simmons was Dudley's only remaining unsecured creditor. Thus, her best interests were appropriate and sufficient criteria for determining the best interests of creditors. See Schnall v. Fitzgerald (In re Schnall), 2012 WL 1888144 (9th Cir. BAP 2012) (citing Goodrich v. Lines, 284 F.2d 874, 877 (9th Cir. 1960)).

And Simmons persuasively expressed her view that it was in her best interests for Dudley's case to be dismissed. As she stated in her dismissal motion:

> The Debtor has been attempting to discharge Simmons' otherwise nondischargeable nondomestic support obligations and to extinguish Simmons' secured claim through lien avoidance and multiple Plan revisions for over 60 months now. Simmons remains a co-obligor on the Debtor's first mortgage and is unable to secure independent financing for herself as long as that liability remains unsatisfied. After five (5) years of Debtor's Chapter 13 Plan proceedings, that secured

13

> obligation remains at approximately the same level of principal indebtedness as it was when the Debtor filed his case. And although the Debtor made all sixty (60) Plan Payments to the Trustee in order to keep the stay in effect, enjoy the former marital residence while making interest-only payments and otherwise hold Simmons at bay, the Debtor has failed to make . . . the Judgment Lien Payment. The Debtor's conduct constitutes cause for dismissal of his case under 11 U.S.C. § 1307(c) and his case should be dismissed.

Motion to Dismiss (Sept 5, 2012) at 3:21-4:6 (citations omitted). The bankruptcy court's comments at the second dismissal hearing indicate that it understood that Simmons' interests were controlling.

Dudley argues on appeal that, instead of dismissing his bankruptcy case, the bankruptcy court should have merely granted Simmons relief from the automatic stay to permit her to enforce her judgment lien in accordance with nonbankruptcy law. We understand that Dudley believed that this was in his own interest, but Dudley never has explained why this was in Simmons' interest as his sole unsecured creditor.

More importantly, Dudley's argument entirely glosses over the fact that the full sixty-month term of his confirmed chapter 13 plan had elapsed and that Dudley had materially defaulted on his plan obligation to pay Simmons' secured claim. Moreover, he admitted that he had no ability to cure that default or otherwise complete all of his plan obligations in a legally permissible manner. As a result of his inability to satisfy all of his plan financial obligations, Dudley was not entitled to a chapter 13 discharge. See Roberts v. Boyajian (In re Roberts), 279 F.3d 91, 93 n.1 (1st Cir. 2002); In re Rivera, 177 B.R. 332, 335 (Bankr. C.D. Cal. 1995); see also Keith M. Lundin & William

14

H. Brown, Chapter 13 Bankruptcy, 4th Edition, § 343.1, at ¶ [7] (Sec. Rev. July 22, 2004, www.Ch13online.com) (indicating that debtor is not entitled to a chapter 13 discharge unless and until all financial obligations in the entire plan have been satisfied); 8 Collier on Bankruptcy, <u>supra</u>, at ¶ 1328.02 (same).

Not being entitled to a chapter 13 discharge and having run through all of the time afforded to him under his sixty-month chapter 13 plan, no legitimate bankruptcy purpose would have been served by the preservation of his chapter 13 bankruptcy case. Accordingly, dismissal was appropriate.

**CONCLUSION**

For the reasons set forth above, we AFFIRM the bankruptcy court's order dismissing Dudley's bankruptcy case.