NOT FOR PUBLICATION

# UNITED STATES BANKRUPTCY APPELLATE PANEL

## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re: | BAP No.   CC-11-1465-KiMkH |
| RAY CAI; PEILIN HU, | Adv. No.  09-01265-BR |
| Debtors. | Bk. No.   08-31525-BR |
| RAY CAI, | |
| Appellant, | |
| v. | **M E M O R A N D U M**[1] |
| SHENZHEN SMART-IN INDUSTRY COMPANY, LTD.; YI DANSHAN INDUSTRY COMPANY, LTD.; HUIDONG WANDA INDUSTRY COMPANY, LTD.; HUIZHOU WANDA SHOES CO., LTD., | |
| Appellees. | |

Argued and Submitted on February 24, 2012,
at Pasadena, California

Filed - May 7, 2012

Appeal from the United States Bankruptcy Court
for the Central District of California

Honorable Barry Russell, Bankruptcy Judge, Presiding

Appearances:     Kathleen P. March of The Bankruptcy Law Firm, P.C. argued for appellant, Ray Cai; Steve Qi of the Law Offices of Steve Qi & Associates argued for appellees, Shenzhen Smart-In, Industry Company, Ltd., Yi DanShan Industry Company, Ltd., Huidong Wanda Industry Co., Ltd., and Huizhou Wanda Shoes Company, Ltd.

---

[1] This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have (see Fed. R. App. P. 32.1), it has no precedential value. See 9th Cir. BAP Rule 8013-1.

Before: KIRSCHER, MARKELL, and HOLLOWELL, Bankruptcy Judges.

Before us is the second appeal in this case.[2] Appellant Ray Cai ("Cai") appeals the bankruptcy court's further findings and judgment determining that his debts to appellees are nondischargeable under § 523(a)(2)(A).[3] Appellees are Shenzhen Smart-In Co., Ltd. ("Shenzhen Smart-In"), Yi Dan Shan Industry Co., Ltd. ("Yi Dan Shan"), and Huidong Wanda Industry Co., Ltd. and Huizhou Wanda Shoes Co., Ltd. (together "Parties Wanda")(collectively "Appellees").[4] In Cai's first appeal, the Panel vacated and remanded the bankruptcy court's nondischargeability judgment against Cai for lack of sufficient findings under FRCP 52(a). Upon remand, the bankruptcy court made the required further findings and again determined that Cai's debts to Appellees were nondischargeable under § 523(a)(2)(A). We AFFIRM the bankruptcy court's further findings. However, as more

---

[2] Cai's wife, Peilin Hu ("Hu"), was a defendant in the underlying adversary proceeding and an appellant in the first appeal. In the first judgment, the bankruptcy court determined that insufficient evidence existed regarding Appellees' debts as to Hu. Upon remand of the first appeal, the bankruptcy court made the same determination. Appellees have not appealed that ruling, and Hu is not an appellant in this appeal.

[3] Unless specified otherwise, all chapter, code, and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and the Federal Rules of Bankruptcy Procedure, Rules 1001-9037. The Federal Rules of Civil Procedure are referred to as "FRCP."

[4] Guan Hang Shoes and HongKong Guan Hang International Group Co., Ltd. (together "Parties Guan Hang") were plaintiffs in the adversary proceeding and appellees in the first appeal. Upon remand of the first appeal, the bankruptcy court determined that insufficient evidence existed to support nondischargeability as to Parties Guan Hang's debt. Parties Guan Hang have not appealed that determination.

thoroughly explained below, we must VACATE the judgment and REMAND for the limited purpose of amending the judgment to include the dollar amount of debt deemed nondischargeable.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

The factual background in this case is more fully set forth in the Panel's Memorandum issued on February 2, 2011, in Cai's first appeal. CC-10-1287-DKiPa. Cai was the owner and CEO of Citicross Corp. ("Citicross"), which imported and distributed women's shoes manufactured in China from 2003 until approximately 2007. Appellees are manufacturers and/or distributors of shoes made in China. Cai, on behalf of Citicross, ordered and received multiple shipments of shoes from Appellees that were not paid for despite Cai's repeated statements to each Appellee before placing the orders that he intended to pay for, and had the funds to pay for, the shoes.

In Cai's first appeal, the Panel determined that the bankruptcy court's nondischargeability judgment lacked sufficient findings to support it. It vacated the judgment and remanded the matter for further findings. Upon remand, the bankruptcy court did not take any additional evidence or briefing, or hold any further proceedings. Therefore, the further findings are based on the original record, which included a two-day trial and declarations from Cai and various witnesses for Appellees.

On August 19, 2011, the bankruptcy court found that Cai knowingly made the same two false statements to each Appellee: (1) that he intended to pay for the shoes ordered and delivered; and (2) that he had sufficient funds to pay for the shoes. Further Findings (Aug. 19, 2011) 2:2-3. Alternatively, the court

-3-

found that even had Cai said that he intended to pay for the shoes, without any reference to having sufficient funds to pay for them, it would still find the debts nondischargeable. Id. at 2:6-7. The court found no need to resort to an "alter ego" theory to impose personal liability on Cai; Cai was personally liable because he is the one who defrauded Appellees.[5] Id. at 2:12-15.

The bankruptcy court further found that each Appellee relied upon Cai's repeated promises to pay for the shoes, and did so justifiably given the "very difficult circumstances in which Mr. Cai put the creditors[.] [T]heir only hope of being paid on the previous shipments was to ship more shoes and hope that Mr. Cai would finally live up to his promises to pay. Obviously, at some point, they had enough of his lies and made no further shipments." Id. at 2:20-22.

Finally, the bankruptcy court concluded that Cai proximately caused the damage to Appellees. It found that Cai was not a credible witness, and it did not believe his alleged excuses for nonpayment. Id. at 3:3. On the other hand, the court believed Appellees' testimony that they were unable to resell the specially-ordered shoes. Id. at 3:3-5.

Cai timely filed his notice of appeal on August 29, 2011. Upon review of the record, we determined that no new judgment had yet been entered. As a result, the notice of appeal was ineffective to confer jurisdiction. See Rule 8002. On

---

[5] Although Cai raised the alter ego issue in his statements of issues on appeal, he did not raise this argument in his opening brief. Accordingly, this issue has been waived. Golden v. Chicago Title Ins. Co. (In re Choo), 273 B.R. 608, 613 (9th Cir. BAP 2002)(arguments not specifically and distinctly made in an appellant's opening brief are waived).

October 18, 2011, we issued an order requiring the parties to obtain a separate judgment from the bankruptcy court. The separate judgment was entered on October 28, 2011.

## II. JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 157(b)(2)(I) and 1334. We have jurisdiction under 28 U.S.C. § 158.

## III. ISSUE

Did the bankruptcy court err when it entered the nondischargeability judgment against Cai under § 523(a)(2)(A)?

## IV. STANDARDS OF REVIEW

The parties dispute the standard of review in this case. In claims for nondischargeability, the Panel reviews the bankruptcy court's findings of fact for clear error and conclusions of law de novo, and applies de novo review to "mixed questions" of law and fact that require consideration of legal concepts and the exercise of judgment about the values that animate the legal principles. Oney v. Weinberg (In re Weinberg), 410 B.R. 19, 28 (9th Cir. BAP 2009).

The determination of intent to defraud, justifiable reliance, and proximate causation are questions of fact reviewed for clear error. Eugene Parks Law Corp. Defined Benefit Pension Plan v. Kirsh (In re Kirsh), 973 F.2d 1454, 1456 (9th Cir. 1992) (justifiable reliance); First Beverly Bank v. Adeeb (In re Adeeb), 787 F.2d 1339, 1342 (9th Cir. 1986)(intent); Rubin v. West (In re Rubin), 875 F.2d 755, 758 (9th Cir. 1989)(proximate causation). The bankruptcy court's witness credibility findings are entitled to special deference, and are also reviewed for clear error.

-5-

In re Weinberg, 410 B.R. at 28; Rule 8013. If two views of the evidence are possible, the trial judge's choice between them cannot be clearly erroneous. Hansen v. Moore (In re Hansen), 368 B.R. 868, 875 (9th Cir. BAP 2007). A finding is clearly erroneous if it is illogical, implausible, or without support in the record. United States v. Hinkson, 585 F.3d 1247, 1261 (9th Cir. 2009)(en banc).

## V. DISCUSSION

### A. Section 523(a)(2)(A).

Section 523(a)(2)(A) provides that, "A discharge under . . . this title does not discharge an individual debtor from any debt (2) for money, property, services, or an extension, renewal or refinancing of credit, to the extent obtained by (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition."

To prevail on a claim under § 523(a)(2)(A), a creditor must establish five elements: (1) the debtor made representations; (2) that at the time he knew were false; (3) that he made them with the intention and purpose of deceiving the creditor; (4) that the creditor relied on such representations; and (5) that the creditor sustained the alleged loss and damage as the proximate result of the debtor's misrepresentations. Ghomeshi v. Sabban (In re Sabban), 600 F.3d 1219, 1222 (9th Cir. 2010). The creditor bears the burden of proving all five of these elements by a preponderance of the evidence. Id. In order to strike a balance between allowing debtors a fresh start and preventing a debtor from retaining the benefits of property obtained by fraudulent

-6-

means, exceptions to discharge under § 523(a)(2)(A) are construed strictly against creditors and in favor of debtors.  Id.

**B.  The bankruptcy court did not err when it entered the nondischargeability judgment against Cai under § 523(a)(2)(A).**

   **1.  Cai's statements were not oral statements of financial condition excepted under § 523(a)(2)(A).**

Cai contends that the debts to Appellees should be discharged because his statements at issue were oral statements of financial condition, which are expressly precluded under the statute. Specifically, Cai argues that the bankruptcy court's finding of "implicit in the promise to pay is the ability to pay by having sufficient funds to pay . . ." is a finding that both of Cai's statements (1) that he intended to pay for the shoes, and (2) that he had sufficient funds to pay for the shoes, constitute the same thing: Cai had sufficient funds to pay for the shoes.  Cai contends this statement is a statement of financial condition not actionable under § 523(a)(2)(A).  We disagree with Cai for two reasons.  First, Cai fails to mention the bankruptcy court's other critical finding about his statements: that even had Cai said he intended to pay for the shoes, without ever representing that he had sufficient funds to pay for them, the court would still have found the debts nondischargeable.  Second, Cai's statement does not constitute an oral statement of financial condition excepted under the statute.

In a recent opinion decided while this appeal was pending, we adopted the "narrow" view of interpreting the term "statement respecting the debtor's . . . financial condition" under § 523(a)(2)(A).  Barnes v. Belice (In re Belice), 461 B.R. 564,

-7-

577-78 (9th Cir. BAP 2011).  In <u>Belice</u>, we held that such statements "are those that purport to present a picture of the debtor's overall financial health."  <u>Id.</u>  Relying on <u>Cadwell v. Joelson (In re Joelson)</u>, 427 F.3d 700, 714 (10th Cir. 2005), we explained:

> Statements that present a picture of a debtor's overall financial health include those analogous to balance sheets, income statements, statements of changes in overall financial position, or income and debt statements that present the debtor or insider's net worth, overall financial health, or equation of assets and liabilities . . . .  What is important is not the formality of the statement, but the information contained within it — information as to the debtor's or insider's overall net worth or overall income flow.

<u>Id.</u> at 578 (citing <u>In re Joelson</u>, 427 F.3d at 714).

Based on this narrow interpretation, Cai's statement that he had sufficient funds to pay for the shoes does not constitute a statement respecting his financial condition.  While this statement may be a closer call than those at issue in <u>Belice</u>, it does not shed any real light on Cai's overall net worth or his overall income flow.

However, even if Cai's statement that he had sufficient funds to pay for the shoes somehow constituted an oral statement of financial condition, this was not his only statement to Appellees. When each Appellee asked Cai before shipping out another order for payment for the previous unpaid shipments, Cai repeatedly told them that he intended to pay for the shoes but that he needed more time.  Clearly, this statement is not a statement respecting Cai's financial condition.  As noted by Judge Pappas at oral argument in Cai's first appeal:

> But, if a debtor tells a creditor, 'I have the money to

-8-

repay the debt, or the loan that I'm about to get from you,' it seems to me that, arguably, that's a statement about the debtor's financial condition. I have the money. If the debtor says, 'I intend to repay you,' but does not have the intent to repay, is the statement, 'I intend to repay you,' a statement about the debtor's financial condition? Aren't they two different things?

. . .

. . . But, the problem is, is I think -- didn't the bankruptcy judge find that your client made both types of representations?

Tr. of BAP Appellate Oral Argument for Cai v. Shenzhen Smart-In Co., Ltd., CC-10-1287 (2011) (09-01265) (January 21, 2011) 3:12-20; 4:1-3. Therefore, we conclude Cai's statements are actionable under § 523(a)(2)(A).

**2. Cai's statements were false representations.**

The bankruptcy court found that, based on the totality of the circumstances, Cai's statements were false and that he lacked any intent to pay Appellees for the shoe orders at issue. Cai contends the court's findings are fatally vague as to "when" Cai made the statements, and without knowing when the statements were made to each Appellee, the dollar amount of shoe shipments Appellees shipped in reliance on those statements cannot be calculated. Cai contends that the record did not establish what, if any, shoe shipments were shipped <u>after</u> his statements, so therefore Appellees failed to prove their damages. Cai ignores the evidence in this case.

The testifying witness for Shenzhen Smart-In, Dawson Li Guan ("Mr. Guan"), testified that Cai's initial orders with Shenzhen Smart-In were small and paid for promptly. However, beginning in February 2006, Cai's orders became substantially larger, totaling approximately $578,367.00. Because of the order's size, Mr. Guan

-9-

asked Cai if he had sufficient funds to purchase the shipment. Cai responded that he did, and that the balance would be promptly paid just as their prior transactions. Cai did not pay for the February order as promised. This pattern repeated itself in March 2006 (total order $209,032.00), in May 2006 (total order $45,360.00), in June 2006 (total order $19,108.00), in August 2006 (total order $92,601.20), in September 2006 (total order $8,376.00), and in October 2006 (total order $70,776.00). After receiving no payment for any of the shipped orders between February and October 2006, Shenzhen Smart-In refused to make any further shipments. Overall, Cai incurred a debt of about $1.2 million to Shenzhen Smart-In, of which he still owes $958,000.00.

Naizhong Li ("Mr. Li") of Yi Dan Shan testified to a similar story. In 2005, Yi Dan Shan's first year of doing business with Citicross, Cai placed small orders and promptly paid for them. Beginning in April 2006, however, the quantity increased dramatically. Before Yi Dan Shan would ship April's $489,942.00 order, Mr. Li asked Cai if he had sufficient funds to pay for the order. Cai assured him that he had the funds ready for payment. Cai did not pay for the April order as promised. Like Shenzhen Smart-In, this pattern repeated itself in May 2006 (total order $181,800.00), in June 2006 (total order $294,720.12), in July 2006 (total order $137,337.00), and in August 2006 (total order $145,314.00). After receiving no payment for any of the shipped orders between April and August 2006, Yi Dan Shan refused to make any further shipments. Cai's debt to Yi Dan Shan totaled nearly $1 million, of which he still owes $833,229.54.

Parties Wanda's experience parrots that of Shenzhen Smart-In

-10-

and Yi Dan Shan. Shengda Chen ("Mr. Chen") testified that Cai stopped making payments on Citicross's accounts in September 2006. In September 2006, Cai placed a large shoe order for $93,483.00. When Mr. Chen asked Cai if he had sufficient funds to make the purchase, Cai assured him that he did and that payment would be made promptly as in prior purchases. When Cai called in October 2006 to place an order for $44,838.00, Mr. Chen inquired about the unpaid September invoice and asked Cai whether he had the funds to pay for the orders. Cai assured Mr. Chen that he had the money but that he needed more time to make the payments. Parties Wanda shipped out the October order. Cai did not pay for the orders. On cross-examination, Mr. Chen testified that Cai also failed to pay for orders he placed in August, November, and December 2006. Cai's total debt to Parties Wanda was approximately $500,000.00.

Contrary to Cai's argument, the record clearly established "when" Cai made the repeated false statements to each Appellee and how many shoe orders were shipped after he made the false statements. Therefore, assuming Appellees established Cai's intent to deceive, their reliance on his false statements, and that Cai caused their damages, Appellees' damages could be easily calculated. Accordingly, we see no error here.

**3. Cai intended to deceive Appellees.**

A promise made with a positive intent not to perform or without a present intent to perform satisfies § 523(a)(2)(A). In re Rubin, 875 F.2d at 759. The "intent to deceive can be inferred from the totality of the circumstances, including reckless disregard for the truth." Gertsch v. Johnson (In re Gertsch), 237 B.R. 160, 167-68 (9th Cir. BAP 1999). Cai contends

-11-

that the bankruptcy court's finding of his "lack of intent to pay" is negated by the evidence for six reasons.

First, Cai argues that of the 2006 shoe orders complained of by Appellees, Citicross paid them $3.84 million of the $5.8 million owed, which is a 66.2% payment overall, and no reported case has found lack of intent to pay under such circumstances. This argument is problematic for two reasons. A debtor's partial payment of a debt does not necessarily equate to a lack of intent to defraud. Here, by making at least some payments, Cai was able to induce Appellees to continue to ship shoes to Citicross. Moreover, Cai appears to be basing his figures on the total amount of purchases he ever made with each Appellee while in business, which is irrelevant for purposes here. Cai claims he paid Yi Dan Shan $1,250,000 out of the $2 million owed. The orders at issue actually total approximately $1,250,000 and Cai still owes Yi Dan Shan $833,229.54. Shenzhen Smart-In's orders at issue total just over $1 million and Cai still owes it $958,000. Finally, Cai owes Parties Wanda approximately $500,000, almost the entire balance of the orders at issue.

Second, Cai argues that Appellees failed to controvert the historic evidence that Citicross had to sell the shoes ordered from Appellees and then pay Appellees from the proceeds. In other words, Cai contends that the parties' agreement was that unless the shoes sold, Citicross could not or would not have to pay Appellees. This too is incorrect. Each Appellee testified that payments for shoes ordered were due in full within 30-45 days of invoice. Appellees provided Citicross with credit on a Net 30-45 basis. Cai even admitted at trial that payments to Appellees were

-12-

due in full within 30-45 days after the shoes arrived at port. In any event, Citicross apparently sold the shoes from these numerous unpaid orders, but never paid Appellees from the proceeds or otherwise.

Third, Cai contends that he was hindered from selling the shoes, and therefore unable to pay for them, due to Appellees: (1) repeatedly delivering shoes late (past the selling season); and (2) delivering poor quality shoes. On these issues, the bankruptcy court found Cai's testimony not credible. Morever, Appellees offered contrary testimony as to the alleged late and/or poor quality shipments. Notably, Citicross employees stationed at Appellees' manufacturing facilities in China oversaw production and scheduled timing of all shipments. If any shipment was to be late, Cai knew about it in advance. Granted, if delays in production existed beyond Citicross's control, it follows that Citicross would not have control over late shipments, assuming it still wanted the delayed shipment. However, when the bankruptcy court questioned Cai, a savvy businessman, why he accepted late, unsellable shipments of shoes, Cai had no real explanation other than that Appellees begged him to do so. Trial Tr. (May 20, 2010) at 81:9-23. The bankruptcy court found that, considering the sophistication level of the parties, Cai's explanation "[didn't] make any sense." Id. at 100:6. Mr. Chen testified that no shipments from Parties Wanda were ever late. Moreover, although Cai testified to possessing documents reflecting his communications with Appellees that he was deducting certain amounts for the late shipments, Cai admitted that he did not submit these documents in the record. What documents Cai did

-13-

offer to prove the alleged late shipments fail to identify which manufacturer was responsible for that particular order, or whether any of those orders were even placed with Appellees.

Cai also alleged that because the shoes were defective, his customers refused to pay Citicross, and therefore Citicross could not pay Appellees. This testimony is contradicted by the facts of the case and Appellees' testimony. Citicross employees oversaw manufacturing in China at various stages and inspected the goods before they left the factory for shipment. Each Appellee testified that if a quality issue arose with a certain shipment, the parties would negotiate a discount to Citicross. Mr. Li testified that total deductions to Citicross for defective shoes from Yi Dan Shan were $2,685.00. Mr. Chen testified that total deductions to Citicross for defective shoes from Parties Wanda were approximately $4,000. Cai admitted he had no documentary evidence reflecting his communications with Appellees about the many defective shoes. The only documentary evidence Cai submitted in the record were some emails and photos from Citicross customers complaining about the quality of certain shipments. Besides overcoming hearsay and other authentication issues with these documents, all of the complaint emails are dated from mid-2007, which is long after any of the alleged defective shipments from 2006. Further, none of the complaint emails prove that Appellees were the manufacturers of these shoes.

Appellees' discounts of approximately $7,000 for admittedly defective shoes certainly does not excuse Cai from paying Appellees for the nearly $3 million in goods Citicross received. It also defies credulity that Cai would continue to place orders

-14-

with companies that were repeatedly sending Citicross a large amount of defective shoes.

Fourth, Cai contends that "Appellees" made it impossible for Citicross to sell any of the delivered shoes because they sued Citicross in state court for nonpayment and attached the shoes. Cai has failed to meet his burden of proof on this issue. All we have in the record to support his argument is a handwritten application for an ex parte writ of attachment by Shenzhen Smart-In that is not signed by the state court. No evidence exists of any attachment order applied for, or entered in favor of, Yi Dan Shan or Parties Wanda. Although not in the record, counsel for Appellees admits on appeal that an attachment order exists, but contends it was for only approximately $20,000 worth of goods, and even most of those shoes had already been sold.

Fifth, Cai argues that his and Hu's equity contribution to Citicross for $844,000, which Cai claims Citicross paid to Appellees, is contrary to no intent to pay. Although Citicross paid Appellees some money, nothing in the record establishes that Appellees received anywhere near $844,000, or proves that Citicross used any of the funds to pay Appellees.

Finally, Cai contends that his and Hu's posting of their home as collateral for a loan for Citicross, which they lost to foreclosure, is contrary to how a person having a lack of intent to pay acts. But this single fact, even if true, does not negate all of the evidence of Cai's bad intent.

Based upon our clearly erroneous standard of review, and considering the special deference we must accord the bankruptcy court on its witness credibility determinations, we conclude the

bankruptcy court's finding that Cai intended to deceive Appellees is not illogical, implausible, or without support in the record. Hinkson, 585 F.3d at 1261.

**4.    Appellees justifiably relied on Cai's false statements.**

A creditor must establish that it relied on a debtor's false statement.  The Supreme Court has held that the degree of the creditor's reliance need only be justifiable, not reasonable. Field v. Mans, 516 U.S. 59, 74 (1995); Citibank (South Dakota), N.A. v. Eashai (In re Eashai), 87 F.3d 1082, 1090 (9th Cir. BAP 1996).  Justification "is a matter of the qualities and characteristics of the particular plaintiff, and the circumstances of the particular case, rather than of the application of a community standard of conduct to all cases."  Field, 516 U.S. at 71 (quoting Restatement (Second) of Torts § 545A, cmt. b (1976)).

Cai contends that reliance was not proven in this case because: (1) Appellees were relying on proceeds from shoe sales to get paid; (2) the further finding that Appellees' "only hope of being paid on previous shoe shipments was to ship more shoes" recognized that fact; and (3) Appellees admitted they shipped shoes to Citicross based on Citicross's past history of payments. We have already rejected Cai's first argument above.  Appellees extended Citicross credit on a Net 30-45 basis and expected payment in full within 30 or 45 days after invoice.

As for his second argument, even if Appellees recognized that Citicross needed to sell shoes from future orders to pay for previous ones, Appellees sent the shoes in reliance on Cai's statement that he was eventually going to pay them for all of the shipments.  Despite receiving the additional orders, Cai still

-16-

never paid for the shoes as promised.

We also reject Cai's third argument. Each Appellee testified that when they began doing business with Citicross, Cai placed smaller orders and promptly paid for them. Over time, Cai built a sense of trust with Appellees. Based on Citicross's past prompt payments, Appellees trusted Cai would continue this pattern when the quantities increased, and they extended Citicross the same payment terms. Nonetheless, before they shipped the larger shoe orders, each Appellee asked Cai whether Citicross had the funds to pay for the shipments. Cai assured them that he had the funds and that payment would be prompt as usual. Once Citicross failed to pay for the first larger orders, each Appellee inquired about payment and Cai again reassured each of them that payment was soon forthcoming. After Cai's assurances failed several times, Appellees finally quit believing Cai and cut their losses. While the circumstances of this case may extend the limits of what we may normally consider justifiable reliance, at least with respect to some of the later orders, on this record we cannot conclude the bankruptcy court's finding that Appellees justifiably relied on Cai's false statements is illogical, implausible, or without support in the record. Hinkson, 585 F.3d at 1261.

**5.    Cai proximately caused the damages to Appellees.**

Causation or proximate cause entails (1) causation in fact, which requires a defendant's misrepresentations to be a substantial factor in determining the course of conduct that results in loss, and (2) legal causation, which requires a creditor's loss to "reasonably be expected to result from the reliance." Beneficial Cal., Inc. v. Brown (In re Brown), 217 B.R.

-17-

857, 862 (Bankr. S.D. Cal. 1998)(citing Restatement (Second) of Torts §§ 546, 548A (1976)).

Cai does not appear to contest the bankruptcy court's finding that he caused Appellees' damages, other than arguing that Appellees had a duty to mitigate their damages and take back unsold shoes and resell them. Based on Appellees' testimony, the bankruptcy court found that Appellees were unable to take back any unsold shoes because they were special orders with Citicross's name already embossed on them. In addition, Mr. Li of Yi Dan Shan testified that when he visited Citicross's warehouse in California in August 2006, he noticed that his company's inventory had already been sold.

In any event, we have already concluded that the bankruptcy court did not err when it determined that Appellees shipped the shoe orders at issue in reliance on Cai's false statements that he would pay for them and that he had the funds to do so. As a result of his false statements and deceptive conduct, Cai incurred the debts to Appellees. Cai did not pay Appellees for the shoes and they, therefore, suffered an actual loss as a result. Accordingly, we conclude the bankruptcy court did not err in determining that the debts to Appellees are nondischargeable under § 523(a)(2)(A).

## VI. CONCLUSION

For the foregoing reasons, we AFFIRM the bankruptcy court's further findings. However, we agree with Cai that the new judgment is fatally vague because it states only that "Mr. Cai's debts to [Appellees] shall not be discharged" and fails to state which debts are owed to whom and in what amounts. As a result, we

-18-

must VACATE the judgment and REMAND with instructions that the bankruptcy court must make a determination of the amounts and allocations owing to the Appellees in accordance with the evidence and this memorandum, given the complaint's prayer for relief and given the fact that the bankruptcy court did not state any reason for not granting full relief in the form of both a liquidation of the claims and a finding of nondischargeability.