# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

ALOHACARE,
                    *Plaintiff-Appellant,*

              v.

STATE OF HAWAII, DEPARTMENT OF
HUMAN SERVICES; LILLIAN B.
KOLLER, Director, State of Hawaii,
Department of Human Services,
                    *Defendants-Appellees.*

No. 08-16589

D.C. No.
1:08-cv-00212-
SOM-BMK

OPINION

Appeal from the United States District Court
for the District of Hawaii
Susan Oki Mollway, District Judge, Presiding

Argued and Submitted
May 15, 2009—Honolulu, Hawaii

Filed July 14, 2009

Before: Alex Kozinski, Chief Judge, Jay S. Bybee and
Consuelo M. Callahan, Circuit Judges.

Opinion by Judge Bybee

8805

**COUNSEL**

James L. Feldesman (argued), Feldesman Tucker Leifer Fidell LLP, Washington, D.C.; Edward C. Kemper, Kemper & Watts, Honolulu, Hawaii, for the plaintiff-appellant.

John F. Molay, Deputy Attorney General, Department of the Attorney General, Honolulu, Hawaii; Charles A. Miller (argued), Covington & Burling, LLP, Washington, D.C., for the defendants-appellees.

---

**OPINION**

BYBEE, Circuit Judge:

AlohaCare submitted a proposal to provide managed health care to Medicaid-eligible aged, blind, and disabled individuals. When the Hawaii Department of Human Services awarded the contract to two other health plans, AlohaCare brought suit under 42 U.S.C. § 1983, alleging that the state had violated the Medicaid Act. We must decide whether 42 U.S.C. § 1396b(m) confers a federal right to contract eligibility on AlohaCare that can be remedied under § 1983. For the reasons discussed below, we conclude that it does not and thus affirm the judgment of the district court.

I

A

Title XIX of the Social Security Act, 42 U.S.C. §§ 1396 et seq., (the "Act" or "Medicaid Act"), provides federal funding to "enabl[e] each State, as far as practicable . . . to furnish . . . medical assistance on behalf of families with dependent children and of aged, blind, or disabled individuals, whose income and resources are insufficient to meet the costs of nec-

essary medical services." 42 U.S.C. § 1396-1. Medicaid is a jointly financed federal-state program that is administered by the States in accordance with federal guidelines. *See Children's Hosp. & Health Ctr. v. Belshe*, 188 F.3d 1090, 1093 (9th Cir. 1999). Medicaid is overseen at the federal level by the Department of Health and Human Services ("HHS") through HHS's Centers for Medicare and Medicaid Services ("CMS"). *See Robert F. Kennedy Med. Ctr. v. Leavitt*, 526 F.3d 557, 558 (9th Cir. 2008).

The Act, among other things, outlines detailed requirements for plan eligibility, *id.* § 1396a, erects a complex scheme for allocating and receiving federal funds, *id.* § 1396b, and imposes detailed requirements on States that wish to delegate the provision of health care services through contracts with managed care organizations ("MCOs"), *id.* § 1396u-2. Hawaii's compliance with these federal laws is the subject of the current dispute.

B

Hawaii has established the Department of Human Services ("DHS") as the "single State agency" responsible for administering and supervising Hawaii's Medicaid program. *See* HAW. REV. STAT. § 26-14; 42 U.S.C. § 1396a(a)(5). Medicaid generally requires a State to conform with federal guidelines prior to receiving federal funds; however, under 42 U.S.C. § 1315, CMS may waive compliance for certain "experimental, pilot, or demonstration project[s]." *Id.* § 1315(a). Pursuant to § 1315, in 1993 Hawaii obtained approval from CMS to operate a managed care model known as QUEST. QUEST is a statewide demonstration project that allows Hawaii to contract with health-maintenance organizations ("HMOs") and provide health care coverage to populations outside the normal reach of Medicaid.

In 1993, a group of Hawaii's federally qualified health care organizations ("FQHCs") formed AlohaCare, a non-profit

organization whose central purpose is to provide and arrange for health care services for Medicaid-eligible individuals in Hawaii. AlohaCare obtained approval to participate as an HMO under the QUEST program. At the time of this suit, AlohaCare was the second largest QUEST health plan in Hawaii and the third largest health plan in the state overall.

FQHCs are organizations, funded by the federal government under 42 U.S.C. § 254b, that provide medical health services to "medically underserved" populations. 42 U.S.C. § 254b(a)(1); *see also id.* § 1396d(*l*)(2)(A)-(B); *id.* § 1395x(aa)(3)(B). The Medicaid Act has a number of provisions that place FQHCs on more favorable footing than other health care organizations. For example, because a number of requirements usually applicable to MCOs do not apply to FQHCs, FQHCs can often become eligible for managed care contracts more easily than other health care organizations. *See id.* § 1396b(m)(1)(C)(ii)(IV), (2)(B)(i)(I), (2)(G).

C

In January 2005, DHS sought to implement a revised version of QUEST, called QUEST Expanded Access ("QEXA"). The purpose of this program was to build on the existing QUEST program and offer managed care services to Medicaid-eligible aged, blind, and disabled individuals. As with the original QUEST program, DHS had to obtain a waiver for QEXA from CMS under 42 U.S.C. § 1315 as an experimental demonstration project. DHS submitted its application in January 2005, and CMS approved the waiver in February 2008.

In 2007, DHS issued a request for proposals ("RFP") for qualified health care plans to provide managed care under QEXA, and AlohaCare submitted a proposal in response. After conducting an internal review, DHS concluded that AlohaCare did not meet the RFP's technical requirements and thus did not consider AlohaCare as a viable candidate for the

QEXA program. Ultimately, DHS awarded contracts to two other health plans: Ohana Health Plan and Evercare. Aloha-Care filed a protest, arguing that its proposal was not properly evaluated. This protest was denied by Lillian Koller, the Director of DHS, and AlohaCare filed a request for reconsideration with the State Procurement Office.

In 2008, before Hawaii had responded to the request for reconsideration, AlohaCare filed a complaint in federal district court against DHS and Koller (collectively "the Defendants") pursuant to 42 U.S.C. § 1983. AlohaCare alleged that the Defendants violated at least five provisions of the Medicaid Act: (1) 42 U.S.C. § 1396b(m) (by awarding contracts in violation of the statute's requirements for MCOs and by finding AlohaCare ineligible for the contract); (2) § 1396u-2(b)(5) (by awarding a contract to an MCO without obtaining adequate assurances that the MCO's network of providers has sufficient capacity to serve the relevant population); (3) § 1396b(i)(17) (by providing rebates to the winning bidders); (4) § 1396u-2(a)(2)(A) (by imposing managed care on the population under the age of nineteen); and (5) § 1396u-2(a)(1)(A) (by restricting the number of entities eligible for managed care contracts).[1] The complaint sought a declaration that the awards made to the selected contractors were null and void, an injunction prohibiting the Defendants from proceeding with the awarded contracts, an order to force DHS to conform its contract requirements to federal law, and an order to force DHS to consider AlohaCare as an eligible applicant in any future procurements.

Shortly after AlohaCare filed suit, Aaron Fujioka, the

---

[1]AlohaCare's complaint also included claims for violations of due process, breach of the implied duty of good faith and fair dealing, and retaliation for the exercise of First Amendment rights. The district court dismissed the first two of these claims, and AlohaCare does not challenge those rulings on appeal. AlohaCare withdrew its retaliation claim at a hearing before the district court.

state's Chief Procurement Officer, denied AlohaCare's request for reconsideration, concluding that there was no evidence that AlohaCare's proposal was improperly evaluated. Defendants filed a motion to dismiss AlohaCare's suit for failure to state a claim, which the district court granted. Based on the three-pronged analysis in *Blessing v. Freestone*, 520 U.S. 329 (1997), the district court found that AlohaCare could not bring claims for violations of the Medicaid Act under § 1983. The court also found that AlohaCare did not have third-party standing to bring these claims on behalf of the aged, disabled, and blind population in Hawaii or Aloha-Care's member FQHCs. AlohaCare filed a timely appeal. We have jurisdiction pursuant to 28 U.S.C. § 1291.[2]

## II

On appeal, AlohaCare argues that the district court erred by (1) failing to analyze its claims under the Supremacy Clause, (2) concluding that AlohaCare could not bring claims pursuant to § 1983 for violations of the Medicaid Act, and (3) failing to conclude that AlohaCare has associational standing to bring claims on behalf of its member FQHCs. We address each of these claims in turn.

## A

"Absent exceptional circumstances, we generally will not consider arguments raised for the first time on appeal, although we have discretion to do so." *El Paso City of Tex. v. Am. W. Airlines, Inc. (In re Am. W. Airlines, Inc.)*, 217 F.3d 1161, 1165 (9th Cir. 2000). We may exercise this discretion "(1) to prevent a miscarriage of justice; (2) when a change in law raises a new issue while an appeal is pending; and (3)

---

[2]We review de novo a dismissal under rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. *Kingman Reef Atoll Invs., L.L.C. v. United States*, 541 F.3d 1189, 1195 (9th Cir. 2008); *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 937 (9th Cir. 2008).

when the issue is purely one of law." *Kimes v. Stone*, 84 F.3d 1121, 1126 (9th Cir. 1996) (internal quotation marks omitted). However, we will not "reframe [an] appeal to review what would be (in effect) a different case than the one the district court decided below." *Robb v. Bethel Sch. Dist. No. 403*, 308 F.3d 1047, 1052 n.4 (9th Cir. 2002).

[1] AlohaCare's claims under the Supremacy Clause have not been preserved for appeal because they were never raised below. There is an important distinction between a claim brought under the Supremacy Clause and a claim brought under § 1983: the latter "require[s] a plaintiff to show the deprivation of 'an unambiguously conferred right' in order to support a cause of action," while the former "is presumptively available to remedy a state's ongoing violation of federal law." *Ind. Living Ctr. of S. Cal. v. Shewry*, 543 F.3d 1050, 1062, 1064 (9th Cir. 2008).

[2] AlohaCare's complaint specifically states that its claims were brought "pursuant to 42 U.S.C. § 1983." AlohaCare never raised an argument under the Supremacy Clause before the district court, and consistently pressed its arguments under the framework of § 1983 cases. We refuse to reverse the district court for failing to foresee what AlohaCare would argue on appeal.

B

AlohaCare also argues that the district court erroneously dismissed its § 1983 claims. Specifically, AlohaCare asserts that the provisions of 42 U.S.C. § 1396b(m) confer an unambiguous federal right to contract eligibility on FQHCs and FQHC-controlled entities.[3] We disagree.

---

[3]In the district court AlohaCare argued that DHS violated a number provisions of the Medicaid Act, including 42 U.S.C. §§ 1396b(m)(1), (m)(2)(B), (m)(2)(G), (i)(17), 1396u-2(a)(1)(A)(ii), (a)(2)(A), (b)(5). However, on appeal AlohaCare has only argued that the provisions of § 1396b(m) give rise to a federal right. We only address the provisions that AlohaCare has presented on appeal.

1

**[3]** In *Maine v. Thiboutot*, 448 U.S. 1, 4-5 (1980), the Supreme Court held that § 1983 actions may be brought against States to enforce rights created by federal statute as well as the Constitution. However, "the remedy announced in *Thiboutot* [is] to be applied sparingly and only to statutes in which Congress speaks with a clear voice and unambiguously creates a right secured by the laws of the United States." *Sanchez v. Johnson*, 416 F.3d 1051, 1056 (9th Cir. 2005) (internal quotation marks and alterations omitted).

In *Blessing*, the Supreme Court established a three-pronged test for determining whether a federal statutory provision creates a federal right: (1) "Congress must have intended that the provision in question benefit the plaintiff," (2) "the plaintiff must demonstrate that the right assertedly protected by the statute is not so 'vague and amorphous' that its enforcement would strain judicial competence," and (3) "the statute must unambiguously impose a binding obligation on the States." 520 U.S. at 340-41 (internal citations omitted).

**[4]** Following *Blessing*, the Court "reject[ed] the notion that [its] cases permit anything short of an unambiguously conferred right to support a cause of action brought under § 1983." *Gonzaga Univ. v. Doe*, 536 U.S. 273, 283 (2002). The Court made it plain that it was not sufficient for § 1983 to assert "interests" or "benefits" under a statute; it is only "*rights* . . . that may be enforced under the authority of that section." *Id.* To create a federal right, a statute's "text must be phrased in terms of the persons benefited . . . with an *unmistakable focus* on the benefited class." *Id.* at 284 (internal quotation marks omitted). Thus, statutes that have an "aggregate focus," and "are not concerned with whether the needs of any particular person have been satisfied," do not give rise to individual rights. *Id.* at 288 (internal quotations omitted).

In *Gonzaga*, the Supreme Court cited Title VI of the Civil Rights Act of 1964 and Title IX of the Education Amend-

ments of 1972 as examples of this rights-creating language. *Id.* at 287. Title VI states that "No person in the United States shall . . . be subjected to discrimination," 42 U.S.C. § 2000d, while Title IX states that "No person in the United States shall, on the basis of sex . . . be subjected to discrimination," 20 U.S.C. § 1681(a). "Although our inquiry should not be limited to looking for those precise phrases, statutory language less direct than the individually-focused 'No person shall . . .' must be supported by other indicia so unambiguous that we are left without any doubt that Congress intended to create an individual, enforceable right remediable under § 1983." *Sanchez*, 416 F.3d at 1058.

2

**[5]** In contrast to the language of Title VI and Title IX, nothing in 42 U.S.C. § 1396b(m) clearly and unambiguously confers a federal right to contract eligibility for FQHCs and FQHC-controlled entities. "[T]he provisions entirely lack the sort of 'rights-creating' language critical to showing the requisite congressional intent to create new rights." *Gonzaga*, 536 U.S. at 287.

**[6]** Section 1396b(m) contains two paragraphs. Paragraph (1) simply defines what "[t]he term 'medicaid managed care organization' means"; it does not focus on the rights of FQHCs other than to point out that for FQHCs and three other types of organizations § 1396b(m)(1)(C)(i) "shall not apply." 42 U.S.C. § 1396b(m)(1)(A), (C)(ii). This is hardly the "*unmistakable focus* on the benefited class" that clearly indicates Congressional intent to confer a federal right. *Gonzaga*, 536 U.S. at 284.

**[7]** Similarly, Paragraph (2) prescribes at great length the conditions under which the States will receive reimbursement for Medicaid expenditures. It does not address the rights of FQHCs or create an unambiguous entitlement to contract eligibility. The language of this paragraph is focused on the pro-

cedural requirements of the Medicaid Act and is squarely "directed to governmental agencies" and "phrased in aggregate terms." *Price v. City of Stockton*, 390 F.3d 1105, 1113 (9th Cir. 2004) (internal quotation marks omitted). This falls well short of the "*specific articulation* of the entitlements guaranteed [by the statute]" that our precedent requires. *Ball v. Rodgers*, 492 F.3d 1094, 1109 (9th Cir. 2007) (emphasis added).

**[8]** In other words, we find that the plaintiffs here are "simply cogs in a grander statutory scheme." *Id.* Although FQHC-operated entities may benefit from the programs authorized under § 1396b(m), that section does not create any rights in FQHCs or FQHC-controlled entities such as AlohaCare that may be enforced under § 1983. As in *Gonzaga*, "[s]ince the Act confer[s] no specific, individually enforceable rights, there [is] no basis for private enforcement." 536 U.S. at 281.

3

**[9]** AlohaCare also argues that HHS's regulations enforcing § 1396b(m) demonstrate that Congress intended to confer a right of eligibility on FQHCs. However, we have held that "[p]laintiffs suing under § 1983 must demonstrate that a *statute*—not a regulation—confers an individual right." *Save Our Valley v. Sound Transit*, 335 F.3d 932, 943 (9th Cir. 2003). Although "a regulation may be relevant in determining the *scope* of the right conferred by Congress," ultimately "the inquiry must focus squarely on Congress's intent." *Id.* (emphasis added). Because we have already concluded that Congress did not intend to confer a federal right, "[i]n this case, our analysis begins and ends with Congress's intent." *Id.* at 944.

C

**[10]** AlohaCare also argues, for the first time on appeal, that it has associational standing to assert the rights of its

FQHC members. An entity has associational standing where "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Or. Advocacy Ctr. v. Mink*, 322 F.3d 1101, 1109 (9th Cir. 2003) (quoting *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 343 (1977)). Because we have concluded that the Medicaid Act does not confer an unambiguous federal right to contract eligibility on FQHCs, AlohaCare's appeal fails under the first prong of our analysis. Because its FQHC members could not sue in their own right, AlohaCare cannot bring claims on their behalf.

### III

We hold that 42 U.S.C. § 1396b(m) does not confer a federal right to contract eligibility on FQHCs, and AlohaCare has forfeited any arguments under the Supremacy Clause.

The judgment of the district court is AFFIRMED.