**NOT FOR PUBLICATION**

**UNITED STATES BANKRUPTCY APPELLATE PANEL**

**OF THE NINTH CIRCUIT**

| | |
|---|---|
| In re: | BAP No. EC-15-1144-JuDTa |
| MICHAEL WEILERT and GENEVIEVE M. de MONTREMARE, | Bk. No. 13-16155 |
| Debtors. | |
| MICHAEL WEILERT; GENEVIEVE M. de MONTREMARE, | |
| Appellants, | |
| v. | **M E M O R A N D U M**[*] |
| BRIAN L. GWARTZ and CHERYL A. SKIGIN, CO-TRUSTEES OF THE PENDRAGON TRUST, | |
| Appellees. | |

Argued and Submitted on June 23, 2016
at Sacramento, California

Filed - July 8, 2016

Appeal from the United States Bankruptcy Court
for the Eastern District of California

Honorable W. Richard Lee, Bankruptcy Judge, Presiding

_____

Appearances: Holly E. Estes argued for appellants Michael Weilert and Genevieve M. de Montremare; Cheryl A. Skigin argued for appellees Brian L. Gwartz and Cheryl A. Skigin, Co-Trustees of the Pendragon Trust.

_____

Before: JURY, DUNN, and TAYLOR, Bankruptcy Judges.

---

[*] This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have (see Fed. R. App. P. 32.1), it has no precedential value. See 9th Cir. BAP Rule 8024-1.

-1-

Chapter 7[1] debtors Michael Weilert (Weilert) and Genevieve M. de Montremare (Montremare) (collectively, Debtors) appeal from the bankruptcy court's order denying their motion under § 522(f)(1)(A) to avoid the judicial lien of appellees, Brian L. Gwartz and Cheryl A. Skigin, co-trustees of the Pendragon Trust (Pendragon). For the reasons discussed below, we VACATE and REMAND.

## I. FACTS

### A. Prepetition Events

In March 2008, Weilert purchased a home for himself and his wife, Montremare, located on North Marion Lane, Clovis, California (Marion Property), as his sole and separate property. Montremare later executed a deed transferring any interest she had in the Marion Property to Weilert as his sole and separate property.

The purchase of the Marion Property coincided with the sale of Debtors' prior home located in Parlier, California (Parlier Property) to Pendragon. The Parlier Property consisted of fifteen acres of land that included a residence, riding arena, and associated buildings. In a subsequent nondischargeability proceeding based on fraud,[2] Pendragon alleged that prior to the sale, Debtors represented to the Friesian horse community,

---

[1] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and "Rule" references are to the Federal Rules of Bankruptcy Procedure.

[2] We take judicial notice of the complaint filed in Adv. No. 13-01104. Atwood v. Chase Manhattan Mortg. Co. (In re Atwood), 293 B.R. 227, 233 n.9 (9th Cir. BAP 2003).

including Ms. Skigin, that Montremare was a French heiress of enormous wealth who spared no expense in the care of her horses or in her horse facility. Pendragon also alleged that in various communications, Weilert told Mr. Gwartz and Ms. Skigin that the Parlier Property was being sold due to Montramare's death. Other allegations included Weilert's representation that Montramare's French family owned 6,000 acres of land in the surrounding area which they intended to maintain for agricultural use for many years rather than for development. Weilert also allegedly told them that the property had a private beach and that there was a contract in place to reassemble the horse arena on the property. Based on these and other representations, Pendragon purchased the property for $2.3 million. Shortly after the close of escrow, Mr. Gwartz and Ms. Skigin learned that Weilert's representations about the property were not true.

On January 5, 2009, Pendragon's counsel demanded that Debtors mediate the dispute in order to avoid litigation.

About a month later, on February 6, 2009, Montremare formed the Madonna della Pietra Trust (Madonna Trust). In the trust document, Montremare was named the trustor, the trustee, and a beneficiary. The "trust estate" was described as the "property, plus any proceeds and undistributed income listed in Schedule A and any property hereafter transferred to the trust by the Trustor, . . . her attorney-in-fact. . . or from any other person or source." Montremare, as trustee, expressed her consent and agreement with Weilert to transmute the property in Schedule A, including the Marion Property, to her separate

-3-

property.

The trust instrument also provided that the power to revoke "may be exercised only by the Trustor personally . . . or pursuant to authority and for purposes expressly provided in a durable power of attorney executed by her." The trust did not say how the property would be distributed if Montremare revoked the trust. Upon Montremare's death, the trust would become a spendthrift trust benefitting Debtors' daughter. Montremare executed the trust in her capacity as trustor and trustee.

On the same date the Madonna Trust was formed, Weilert transferred the Marion Property by grant deed to Montremare, as trustee of the Trust. The grant deed stated that Weilert, as grantor, "consents and agrees that the property . . . shall be and is hereby, transmuted into the separate property of" Montremare.

On March 25, 2009, Pendragon filed suit against Weilert in the Fresno County Superior Court alleging breach of contract and fraud centered on the alleged misrepresentations regarding the horse arena. The complaint was amended several times including an amendment to add Montremare as a defendant after Pendragon learned through discovery that she was not deceased. Pendragon alleged that repairs to the barn and arena exceeded $800,000. It further asserted that the fair market value of the property without the barn and arena was $1.6 million.

The state court lawsuit against Debtors was tried before a jury in September and October 2012. On October 25, 2012, the jury returned a special verdict in favor of Pendragon on each count, including intentional fraud and fraud by concealment, in

-4-

the amount of $700,000 on each fraud count. On October 29, 2012, after additional evidence, the jury awarded $850,000 in punitive damages for a total award of $1.50 million. On October 30, 2012, the state court entered the judgment against Weilert and Montremare.

Debtors appealed the judgment but did not post a bond. Pendragon commenced collection efforts in January 2013. On January 18, 2013, Pendragon recorded an abstract of judgment in Fresno County.

As part of its collection efforts, Pendragon moved for various postjudgment enforcement orders. The state court granted these motions and issued a freeze order, turnover order, assignment order and charging order. These orders enjoined Debtors from transferring any assets and froze funds held in any deposit account.

Pendragon later discovered that Debtors had violated the enforcement orders and thus moved to dismiss Debtors' appeal of the judgment under the doctrine of disentitlement.[3] Pendragon identified forty-seven different transfers of money that violated the trial court's orders. On this basis, the state appellate court dismissed Debtors' appeal of the judgment, finding that it would be unjust to allow them to seek the benefit of an appeal while willfully disobeying the trial

---

[3] Disentitlement is based in equity. San Francisco Unified School Dist. ex. rel. Contreras v. First Student, Inc., 213 Cal.App.4th 1212, 1239 (2013) (disentitlement is "'[A] discretionary tool that may be applied when the balance of the equitable concerns make it a proper sanction.'") (citing People v. Puluc-Sique, 182 Cal.App.4th 894, 897 (2010)).

-5-

court's valid orders and frustrating Pendragon's efforts to enforce the judgment.

**B.     Bankruptcy Events**

On September 13, 2013, Debtors filed a chapter 7 bankruptcy case.[4]  They listed the Marion Property in Schedule A showing that legal title to the property was held by the Madonna Trust (actually, title was held by Montremare as trustee).  They valued the property at $429,000 and showed that it was encumbered by a lien in favor of M&T Bank in the amount of $289,000.  In Schedule B, they listed their interest in the Madonna Trust showing it as a "revocable estate planning trust holding title to Debtors' residence."  In Schedule C, Debtors listed an exemption in the Marion Property in the amount of $175,000 under Cal. Code Civ. Proc. § 704.730.  Pendragon was the largest creditor.

Debtors filed a motion to compel abandonment of the Marion Property.  The bankruptcy court granted Debtors' motion by order entered on April 2, 2015, which abandoned the "bankruptcy estate's interest" in the property.

Debtors also filed a motion to avoid Pendragon's judicial lien contending that it impaired their homestead exemption under

---

[4] On June 7, 2013, M&G Weilert Family, L.P. filed a chapter 11 proceeding.  This case was dismissed on August 8, 2013, on the motion of the United States Trustee.  Debtors re-filed the partnership case under chapter 7 on September 13, 2013.  Debtors' individual case was later substantively consolidated with the partnership case.

-6-

§ 522(f)(1).[5] Montremare submitted her declaration in support. There, she declared that she owned the Marion Property as the sole trustee of the Madonna Trust and claimed a homestead exemption in the property in the amount of $175,000.

Pendragon opposed the motion on several grounds. First, it argued that the homestead exemption should be $100,000 and not $175,000 as claimed by Debtors. Pendragon asserted that Debtors set forth no basis for claiming the $175,000 exemption which required one of the Debtors to be over 65, disabled, or over the age of 55 and with gross annual income of less than $35,000. Next, Pendragon maintained that the homestead exemption should be reduced for improvements made to the Marion Property because the funds used for those improvements were made after the state court had issued a freeze order prohibiting the transfer of any funds from Debtors' accounts. According to Pendragon, the funds used for the improvements were funds obtained from the fraudulent sale of the Parlier Property. Therefore, Pendragon asserted that the homestead exemption should be reduced under § 522(o) and (p).

Third, Pendragon argued that under the holding in In re Bogetti, 349 B.R. 14 (Bankr. E.D. Cal. 1996), Debtors could not utilize § 522(f)(1) to avoid its judicial lien because the trust, not the Debtors, held legal title to the property.

---

[5] Debtors had previously filed a motion to compel abandonment and a motion to avoid Pendragon's judicial lien. Debtors' first motion to avoid Pendragon's lien was taken off calendar since the parties went to mediation. The bankruptcy court denied Debtors' motion to abandon without prejudice at the same time.

-7-

Finally, Pendragon maintained that under Cal. Code Civ. Proc. § 697.340,[6] its judgment lien did not attach to Montremare's beneficial interest in the Madonna Trust. Since her beneficial interest was the only interest to which the homestead exemption attached, Pendragon argued that there could be no impairment of that exemption when, under California law, her interest was not subject to attachment.

On March 26, 2015, the bankruptcy court held a hearing on the matter, after which the parties submitted supplemental briefing. In its supplemental brief, Pendragon further explained why its judgment lien did not attach to Montremare's beneficial interest in the Marion Property. Pendragon noted that under California law, a judgment lien attaches only to the judgment debtor's interest in the real estate not to bare legal title. Palm v. Klapperman (In re Cady), 266 B.R. 172, 181 (9th Cir. BAP 2001) (citing Davis v. Perry, 120 Cal.App. 670, 676 (1932) ("The law is well settled that the lien of a judgment does not attach to a naked title but only to the judgment debtor's interest in the real estate; and if he has no interest, though possessing the naked title, then no lien attaches.")).

Next, Pendragon cited Cal. Prob. Code § 18200 which governs

_____

[6] Cal. Code Civ. Proc. § 697.340(a) provides:

A judgment lien on real property attaches to all interests in real property in the county where the lien is created (whether present or future, vested or contingent, legal or equitable) that are subject to enforcement of the money judgment against the judgment debtor . . . at the time the lien was created, but does not reach . . . the interest of a beneficiary under a trust. . . .

-8-

the rights of creditors in a revocable trust where the settlor retains the power to revoke the trust. The statute states:

> If the settlor retains the power to revoke the trust in whole or in part, the trust property is subject to the claims of creditors of the settlor to the extent of the power of revocation during the lifetime of the settlor.

According to Pendragon, this statute had no application because Weilert, not Montremare, was the "settlor," as he was the one who contributed the Marion Property, his sole and separate property, to the Madonna Trust. Pendragon further argued that Weilert terminated any revocation rights with the transmutation of his prior ownership interest to Montremare. Based on this reasoning, Pendragon asserted that under Cal. Code Civ. Proc. § 697.340(a), since Montremare was not the "settlor" and only had a beneficial interest in the trust property, its judgment lien did not attach to that interest.[7]

The bankruptcy court issued its memorandum decision denying Debtors' motion on April 16, 2015. There, the bankruptcy court first addressed Debtors' interest in the Marion Property. The court found that Weilert's interest terminated in 2008 when he conveyed the property to the Madonna Trust. The court further found that Montremare's interest in the Marion Property was that of a trust beneficiary. Next, following Bogetti, the bankruptcy court found that since legal title to the trust res (the Marion Property) was vested in the Madonna Trust, the trust was the

---

[7] While Pendragon raised other issues relating to the imposition of a constructive trust and the homestead exemption, those issues were not decided by the bankruptcy court and thus are not before us in this appeal.

legal owner of the property. The court concluded that Debtors could not utilize § 522(f)(1) to avoid a judicial lien that encumbered property "owned by another."

The bankruptcy court then considered whether there was a "fixing" of the judicial lien against Montremare's beneficial interest in the Marion Property for purposes of § 522(f)(1). The bankruptcy court observed that under Cal. Code Civ. Proc. § 697.340(c), her beneficial interest in the Madonna Trust was excluded from the normal lien attachment process. The court next pointed out that under Cal. Code Civ. Proc. § 709.010, a judgment creditor had to file an application in a court with jurisdiction over the trust to enforce a money judgment against the beneficial interest of a trust. Based on the statutory scheme, the bankruptcy court found that Pendragon's recording of an abstract of judgment did not automatically "fix a lien" against Montremare's beneficial interest. For these reasons, the court denied Debtors' motion.

On April 17, 2015, the bankruptcy court entered the order denying Debtor's motion to avoid Pendragon's judicial lien. Debtors timely appealed from that order.

On June 3, 2015, Debtors filed their opening brief without, among other things, excerpts of record. As a result, the Clerk's office sent a notice of deficient brief to Debtors' counsel. Debtors filed their excerpts of record after Pendragon had filed its brief and after Debtors had filed their reply.

On September 28, 2015, the Clerk's office issued an order (September Order) stating that it was informed that the parties reached a settlement of their dispute at an August 2015

mediation and planned to dismiss the appeal. No motion to dismiss the appeal had been filed and the underlying bankruptcy docket did not indicate that a motion to approve the settlement had been filed in the bankruptcy court. The order required Debtors, no later than October 5, 2015, to file either a motion to dismiss the appeal, a stipulation to dismiss the appeal, or a statement indicating that the parties intended to proceed with the appeal. To the extent necessary, the order provided a limited remand so that the bankruptcy court could address any motion for approval of a settlement.[8] Having received no response to the September Order by the October 5 deadline, the Clerk's office issued an order requiring Debtors to file a response showing cause why the appeal should not be dismissed for lack of prosecution.

On November 4, 2015, Debtors' attorney filed a response requesting oral argument and informing the Panel that even though Debtors had further settlement discussions with Judge Ross, the mediator, those discussions were not successful.

On November 23, 2015, Pendragon filed a motion to dismiss the appeal, or in the alternative, to impose appropriate sanctions. Pendragon's motion was based on Debtors' and their counsel's alleged bad faith for filing excerpts of the record after briefing and including documents which were not within the

---

[8] Pendragon asserts that a settlement was reached and placed on the record. However, according to Pendragon, Debtors repudiated the settlement claiming they did not understand the meaning of the terms to which they had agreed. Debtors maintain there was no agreement. The mediator, Judge Ross, evidently made further attempts to settle the matter.

-11-

designation of the record. Pendragon further asserted that Debtors and their counsel had consistently failed to follow the procedures and rules of this court, thereby prejudicing them in this appeal, increasing the costs and unreasonably delaying the appeal. Pendragon argued that if the Panel deemed alternative sanctions should be imposed, the Panel should strike from Debtors' excerpts of record all documents not previously designated, prohibit any further reference to such documents, and award sanctions against Debtors and their counsel.

Debtors opposed the motion, contending that they filed their excerpts of record and corrected excerpts of record after briefing had concluded to comply with the Clerk's orders regarding the deficiencies and such filing was not "done with any ill intention." Debtors consented to striking the ten documents they "inadvertently" included in the record which were not included in their designation of record on appeal. Debtors also conceded to procedural shortfalls, but stated that their counsel had acted to remedy them to the extent possible within the deadlines imposed by the court. They further maintained that any delay in the appeal was the result of their good faith participation in the mediation process. Finally, Debtors argued that their failure to follow all procedural rules should not result in the dismissal of the appeal under the standards set forth in Ehrenberg v. Cal. State Fullerton (In re Beachport Enter.), 396 F.3d 1083, 1087 (9th Cir. 2005).

Attached to the opposition was the declaration of Debtors' counsel, Riley C. Walter. Mr. Walter explained that it was not his firm's intention to ignore the Clerk's September Order

regarding dismissal of the appeal. Rather, because settlement discussions were still on-going, it was unclear by the October 5, 2015 deadline if the case would be settled, and therefore dismissed, or if oral argument should be set. Mr. Walter represented: "In the future, my office will timely apprise the Court of continued settlement discussions and request additional time to respond." Finally, Mr. Walter declared that he addressed internal office procedures that contributed to the missteps regarding the excerpts and other shortfalls.

On March 15, 2016, the Panel issued an order denying all relief requested in the motion to dismiss and the opposition without prejudice to reconsideration by the merits panel.

## II. JURISDICTION

The bankruptcy court had jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(A). We have jurisdiction under 28 U.S.C. § 158.

## III. ISSUES

A. Whether the bankruptcy court erred in determining Debtors' interests in the Marion Property?

B. Whether the bankruptcy court erred in finding that Debtors could not utilize § 522(f)(1) because the Madonna Trust held legal title to the Marion Property?

C. Whether the bankruptcy court erred in finding that Pendragon's lien obtained by filing its abstract of judgment did not "fix" to Montremare's interest in the Marion Property?

## IV. STANDARDS OF REVIEW

We review the bankruptcy court's conclusions of law and

-13-

questions of statutory interpretation de novo and factual findings for clear error. Beneficial Cal., Inc. v. Villar (In re Villar), 317 B.R. 88, 92 (9th Cir. BAP 2004).

Whether a creditor's judicial lien was avoidable under § 522(f)(1) is a question of bankruptcy law that we review de novo. Id. "When we conduct a de novo review, 'we look at the matter anew, the same as if it had not been heard before, and as if no decision previously had been rendered, giving no deference to the bankruptcy court's determinations.'" Barnes v. Belice (In re Belice), 461 B.R. 564, 572 (9th Cir. BAP 2011) (citing AlohaCare v. Haw. Dept. of Human Servs., 572 F.3d 740, 744 n.2 (9th Cir. 2009)).

Findings of fact are reviewed under a clearly erroneous standard. A court's factual determination is clearly erroneous if it is illogical, implausible, or without support in the record. United States v. Hinkson, 585 F.3d 1247, 1261–62 (9th Cir. 2009) (en banc).

## V. DISCUSSION

### A. Pendragon's motion to dismiss this appeal

We first consider Pendragon's motion to dismiss this appeal. Debtors and their counsel failed to file the transcript, an appendix, and certifications in violation of 9th Cir. BAP R. 8009-1, 8015(a)-1, 8018(b)-1. When they finally filed their excerpts of record after briefing was complete, they included ten documents which were not included in their designation of the record or Pendragon's counter designation. These documents are listed in Pendragon's motion to dismiss and will not be repeated here. They mostly relate to Debtors'

motion to compel abandonment of the Marion Property and objections to the amount of their homestead exemption. Debtors and their counsel concede to striking these documents and, therefore, we do not consider them.

The standards for dismissal for non-compliance with procedural rules are set forth in In re Beachport Entertainment. "In determining whether to dismiss summarily an appeal for non-compliance with a procedural rule, the BAP must consider the impact of the sanction, alternative sanctions, and 'the relative culpability of the appellant and his attorney, because dismissal may inappropriately punish the appellant for the neglect of his counsel.'" 396 F.3d at 1087. "The failure to take into consideration 'the impact of the sanction and the alternatives available to achieve assessment of the penalties in conformity with fault' constitutes an abuse of discretion." Id. "Where the procedural violations have been egregious, however, we have not required an explicit discussion of alternative sanctions." Id.

Here, although we do not condone Debtors' conduct, we are not persuaded that dismissal is warranted. Debtors' brief did contain citations to the docket and once Debtors' counsel became aware of the defect regarding the filing of the excerpts, it was corrected. Furthermore, Mr. Walters explained that he has corrected internal office procedures which caused the procedural violations. He also explained why he did not timely respond to the September Order regarding the status of the settlement. Although his explanation does not excuse his tardiness, we perceive no bad faith or other egregious motive or conduct as to

-15-

why the response was untimely. At minimum, in light of these explanations, the procedural violations appear to be more the fault of counsel than Debtors. Finally, despite the fact no transcript has been filed, the record before us is adequate for us to reach the merits of this appeal. In short, we do not find the procedural violations were based on bad faith or so egregious as to warrant dismissal of this appeal.

Since Debtors have conceded to the striking of the ten documents which were "inadvertently" included in their excerpts of record, Pendragon will suffer no prejudice. Accordingly, we find it unnecessary to consider any alternative sanctions. In sum, Pendragon's motion to dismiss this appeal is denied, and we now consider the merits.

**B.    The Merits**

Section 522(f)(1)(A) permits a debtor to avoid the lien of a judgment creditor on exempt property. It states in relevant part:

> Notwithstanding any waiver of exemptions but subject to paragraph (3), the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is--
>
> (A) a judicial lien . . . .

"[A] debtor may avoid a lien if three conditions are met: (1) there was a fixing of a lien on an interest of the debtor in property; (2) such lien impairs an exemption to which the debtor would have been entitled; and (3) such lien is a judicial lien." Culver, LLC v. Chiu (In re Chiu), 304 F.3d 905, 908 (9th Cir. 2002). This appeal presents issues involving the first element;

-16-

i.e., whether either of the Debtors had an interest in the Marion Property at the time Pendragon recorded its abstract of judgment and, if so, whether Pendragon's lien "fixed" to that interest within the meaning of § 522(f)(1).

### 1. Debtors' Interest in the Marion Property

Whether a debtor ever possessed an interest to which the lien fixed, before it fixed, is a question of state law. <u>Nelson v. Barnes (In re Barnes)</u>, 198 B.R. 779, 782 (9th Cir. BAP 1996) (citing <u>Farrey v. Sanderfoot</u>, 500 U.S. 291, 299 (1991)). Here, California law determines whether Weilert and Montremare had interests in the Marion Property before Pendragon's lien "fixed."

We first consider Weilert's property interest. The bankruptcy court found that his interest in the Marion Property terminated in 2008 when he conveyed the property to the Madonna Trust. The bankruptcy court's determination was a conclusion of law which is subject to the de novo standard of review, under which we determine the issue independently of the bankruptcy court's determination. <u>In re Belice</u>, 461 B.R. at 572.

Although the Marion Property became part of the Madonna Trust by way of the deed transfer, the mere transfer of property into a family trust will not transmute property unless there is a writing that unambiguously states Weilert was making a change in character or ownership of the property. <u>In re Marriage of Starkman</u>, 129 Cal.App.4th 659, 664 (Cal. Ct. App. 2005) (transfer of separate property stock into a family trust did not transmute the property into community property because the writing did not unambiguously state it was making a change in

-17-

character or ownership of the property).  Therefore, only a valid transmutation would effectively divest him of any interest in the Marion Property.

In California, a spouse may transmute separate property to separate property of the other spouse by agreement or transfer. Cal. Fam. Code § 850(c).  A transmutation is "an interspousal property transaction or agreement that works a change in the character of the property."  In re Marriage of Haines, 33 Cal.App.4th 277, 293 (Cal. Ct. App. 1995).  "A transmutation of real property is not valid unless made in writing by an express declaration that is made, joined in, consented to, or accepted by the spouse whose interest in the property is adversely affected."  Cal. Fam. Code § 852(a).  Neither spouse owns an interest in the separate property of the other.  Cal. Fam. Code § 752.

Whether a writing is a valid transmutation is subject to de novo review.  In re Marriage of Lafkas, 237 Cal.App.4th 921, 932 (2015).  The record shows that Weilert transmuted the Marion Property from his sole and separate property to Montremare's sole and separate property in 2008 through the express terms of the grant deed conveying the property to her as trustee of the Madonna Trust:  "Grantor consents and agrees that the property described on Exhibit A shall be, and is hereby, transmuted into the separate property of Genevieve M. de Montremare."  The grant deed, signed by Weilert, meets the statutory requirement of a writing that was "made, joined in, consented to, or accepted by the spouse whose interest in the property is adversely affected."  Cal. Fam. Code § 852(a).  Accordingly, Weilert's

-18-

legal interest in the Marion Property was extinguished in 2008 by a valid transmutation by virtue of the language in the grant deed. Therefore, the bankruptcy court correctly found that § 522(f)(1) was not applicable as to Weilert.

We next consider Montremare's interest in the Marion Property. Again, there is no dispute that Montremare had, at minimum, a beneficial interest in the Marion Property. Indeed, she held various legal interests in the Marion Property. See In re Moffat, 107 B.R. 255, 259 (Bankr. C.D. Cal. 1989) (noting while title to the dwelling was in the living trust, debtor held "various legal interests" in the subject dwelling as a trustor and beneficiary of the living trust which became property of his estate).

As trustor, during her lifetime, Montremare retained all the powers of the trust, including the right to amend or revoke the trust in whole or in part thereby giving her a vested, albeit contingent, reversionary interest in the Marion Property. That reversionary interest made her eligible to claim a homestead exemption under California law — a proposition which Pendragon does not dispute. See Fisch, Spiegler, Ginsbur & Ladner v. Appel, 10 Cal.App.4th 1810, 1813 (1992). The trust terms also show that Montremare retained a life estate in the Marion Property, after which the property was to be held in trust for Debtors' daughter. A life estate is also an interest in real property which gave Montremare the right to claim a homestead exemption despite legal title being held by the Madonna Trust. Id. Finally, as a beneficiary, she held a contingent equitable interest in the Marion Property. Gonsalves

-19-

v. Hodgson, 38 Cal.2d 91, 98 (1951) (it is a rudimentary principle of trust law that the creation of a trust divides title—placing legal title in the trustee, and equitable title in the beneficiaries). Montremare acquired these various legal interests in 2008, prior to Pendragon's recording its abstract of judgment.

### 2. Legal title in the Madonna Trust did not defeat Montremare's lien avoidance rights.

The bankruptcy court found that Debtors could not avoid Pendragon's judicial lien because the Madonna Trust held title to the property. In reaching this conclusion, the bankruptcy court followed the reasoning in Bogetti which, in turn, cited Estate of Willey, 128 Cal. 1, 9-10 (1900), for the proposition that until a trust is revoked, it or its trustee "owns" the trust res. The Bogetti court held that because the revocable trust "owns" the title to its property, "the debtors may not utilize section 522(f)(1)(A) to avoid a judicial lien that encumbers property owned by another."

The bankruptcy court's reliance on Bogetti to defeat Montremare's lien avoidance rights is misplaced for several reasons. First, lien avoidance under § 522(f)(1) does not refer to "ownership" or "legal title," but speaks to the debtor's "interest" in the property. That interest is not limited to ownership or legal title. Indeed, Montremare had several legal interests in the Marion Property as discussed above.

Second, in California, a trust is not a separate entity and does not itself hold title to any property. Portico Mgt. Group, LLC v. Harrison, 202 Cal. App.4th 464, 473 (Cal. Ct. App. 2011);

-20-

see also Nielsen v. Field (In re Nielsen), 526 B.R. 351, 357-58 (Bank. D. Haw. 2015) (noting that Bogetti rests on the view that a trust is a separate entity that owns the property contributed to it - this view is incorrect). Rather, "[l]egal title to property owned by a trust is held by the trustee. . . . 'A . . . trust . . . is simply a collection of assets and liabilities.'" Portico, 202 Cal.App.4th at 473. Here, Montremare held legal title to the Marion Property in her capacity as trustee.

Next, the record shows that (1) Montremare is the trustor, trustee and present beneficiary of the Madonna Trust; (2) Montremare, as trustee, has the power to revoke the trust during her lifetime; and (3) Montremare retained full control over and benefit of the Marion Property in the same manner as if the trust did not exist. These attributes collectively show that the Madonna Trust is a self-settled revocable inter vivos trust. For most purposes, "[t]here is no distinction in California law between property owned by the revocable trust and property owned by the settlor of such a revocable trust during the lifetime of the settlor." Carolina Cas. Ins. Co. v. L.M. Ross Law Group, LLP, 184 Cal.App.4th 196, 208 (2010). In California, "a revocable inter vivos trust is recognized as simply a probate avoidance device . . . .' Property transferred to, or held in, a revocable inter vivos trust is nonetheless deemed the property of the settlor." Id. (citing Zanelli v. McGrath, 166 Cal.App.4th 615, 633 (2008), and Cal. Prob. Code § 18200 ("If the settlor retains the power to revoke the trust in whole or in part, the trust property is subject to the claims

-21-

of creditors of the settlor to the extent of the power of revocation during the lifetime of the settlor.").

Pendragon asserts that these principles do not apply because Weilert is the sole settlor of the Madonna Trust since he contributed the Marion Property - his sole and separate property - to the trust. We disagree. The definition of a settlor is broad and means both the creator of, and donor to the trust. See Cal. Probate Code § 263 (a settlor is creator of an interest under a trust); Cal. Probate Code § 15200 (describing numerous methods of creating a trust); and Black's Law Dictionary (defining a settlor as "one who sets up a trust. Also termed creator; donor; trustor; grantor; founder.").

Montremare falls within the broad definition of a "settlor." She created the Madonna Trust, was the only party to execute the Madonna Trust, and was the trustor. Through the transmutation of the Marion Property to her sole and separate property, she became the owner of the property and held it as trustee. See Cal. Probate Code § 15200(a) ("A declaration by the owner of property that the owner holds the property as trustee" and (d) "An exercise of a power of appointment to another person as trustee."). In addition, as highlighted by Debtors at oral argument, the Madonna Trust held other property which Montremare had contributed directly herself. No case law or statute supports an argument that she would be a settlor as to some properties only. In short, she is a settlor of the trust.

Finally, as noted above, under California law, although the legal title to the Marion Property was held by Montremare as

trustee, her various interests in the property entitled her to claim a homestead exemption. As the Neilsen bankruptcy court noted: "the text of the Bankruptcy Code does not support the Bogetti court's conclusion that a debtor can exempt property held by revocable living trusts but not avoid liens that impair that exemption." Neilsen, 526 B.R. at 357-58.

For all these reasons, the bankruptcy court erred by concluding that Bogetti provided a basis for cutting off Montremare's lien avoidance rights under § 522(f)(1).

### 3. The "fixing" of Pendragon's lien against Montremare's interest

Our final inquiry is whether Pendragon's abstract of judgment "fixed" a liability on Montremare's various interests in the Marion Property. The bankruptcy court found that Pendragon's lien did not attach to Montremare's "beneficial interest" based on California's statutory scheme relating to the attachment of judgment liens. This was error.

First, as discussed above, Montremare held other legal interests in the Marion Property beyond that of a beneficiary. Cal. Code Civ. Proc. § 697.340(a) does not carve out any special procedure for interests other than beneficial interests. Second, the special procedure to enforce a money judgment against a beneficiary's interest in a trust is not applicable here when Montremare is a settlor and has retained the power to revoke the Madonna Trust. As noted above, there is no distinction in California law between property owned by the revocable trust and property owned by the settlor of such a revocable trust during the lifetime of the settlor. Therefore,

-23-

Montremare's interest in the Marion Property was subject to the claims of her creditors. See Cal. Probate Code § 18200 ("If the settlor retains the power to revoke the trust in whole or in part, the trust property is subject to the claims of creditors of the settlor to the extent of the power of revocation during the lifetime of the settlor.").

Accordingly, Montremare's interest in the Marion Property was subject to Pendragon's abstract of judgment at the time it was recorded, which recording created a judicial lien on the property. Montremare was thus entitled to seek avoidance of that lien to the extent it impaired her homestead exemption.[9]

## VI.   CONCLUSION

For the reasons discussed above, we VACATE and REMAND.

---

[9] The validity or amount of her claim of exemption is not before us in this appeal nor are other issues raised by Pendragon in opposition to the lien avoidance which were never addressed by the bankruptcy court. Thus, remand is required for the bankruptcy court to address those issues.

-24-